*Bennington,*
*May,*
*1824.*

## DODGE *vs.* BILLINGS.

Billings agreed with Dodge to transport a quantity of goods from St. Johns to New-York, and gave him the following letter of instuctions:—" Sir, you wil[1] receive of mine, seven packages of merchandise, now in James Watson's store in St. Johns, and forward them to New York, to Robbins & Frost, flour merchants. You will enter them in Vermont District, and pay the expenses and secure the duties, which sums I will stand accountable to you for. You will forward the amount of all the expenses into New York, and duties, by letter, to the above firm, and make them subject to my order only—they are to be got along as cheap as possible."

In an action of *assumpsit* by Dodge *v.* Billings for the duties on the goods—held that to support the action, the plaintiff must prove the entry of the goods at the Custom House and the delivery of them in New York.

Billings gave Dodge the following receipt:—" Received of D. Dodge 275*l* in a Government Bill of Exchange to account for on notes I hold against him."

In an action of *assumpsit* on this receipt—held that parol evidence was admissible on the part of the defendant to prove that the amount of the receipt was by the agreement of the parties at the time the receipt was given, to be accounted for and applied on certain notes which Billings held in favor of one Copp *v.* Dodge.

THIS was an action of *assumpsit* for money had and received, and for money paid, &c

On trial of this cause at February term, 1823, upon the general issue, the Court directed a nonsuit, with liberty to the plaintiff to move to set it aside, on the following statement of the case :

On trial the plaintiff claimed the amount of $536 76, for duties paid on goods, entered by the plaintiff for the defendant at the Custom-House in Vermont District, in pursuance of directions of the defendant contained in the following letter :—

" *Montreal, July,* 7, 1817.

" Mr. D. C. Dodge, Sir, you will receive, of mine, seven packages of merchandize, now in James Watson's store, St. Johns, and forward them to New-York to Robbins & Frost, flour merchants. You will enter them in Vermont District, and pay the expenses, and secure the duties, which sums I will stand accountable to you for. You will forward the amount of all expenses into New York, and duties, by letter, to the above firm, and make them subject to my order only—they are to be got along as cheap as possible.

" OEL BILLINGS."

Whereupon the Court decided that the plaintiff could not re-
cover for said duties without proving the entry of said goods at
the said Custom-House, and that that could only be proved by
the minutes of the entry themselves, if they could be proved, or
else by showing that the parties had liquidated the same and
agreed upon the amount.

The Court also decided that the plaintiff was not entitled to re-
cover the amount of said duties, until he had shown that the goods
had been delivered in the city of New-York, and to the order of
the defendant, in pursuance of his said letter of instructions.

The Court also decided that the following receipt—" St. Ar-
monds, November, 9, 1814, Received of D. C. Dodge, by Horace
Dodge, two-hundred and seventy-five pounds in a Government
Bill of Exchange, to account for at the rate they are going at the
above date, on notes I hold against him, Oel Billings"—of itself
furnishes no cause of action ; and that it was incumbent on the
plaintiff to show that the notes against him on which this receipt
was to apply, had been paid by the plaintiff, without the application
of the sum contained in the receipt.    The plaintiff then produced
a receipt from the defendant in full of all demands, dated the 24th
day of September, 1815, to show the payment of said notes,
without the application of the said first mentioned receipt.

The Court also decided, that parol evidence was admissible to
show that it was agreed at the time said first mentioned receipt
was given, that said receipt was to be accounted for on demands
that one William W. Copp held against the plaintiff, and then in
the hands of the defendant as agent for Copp, and not on demands
that said defendant held against the plaintiff on his own account;
and that the defendant might show that at the time of giving
said receipt, the defendant was acting as agent for said Copp,
and gave the same as such agent.

The defendant on trial produced a receipt from the plaintiff, da-
ted the 26th day of September, 1815, in full of all demands up to
that date, to do away the effect of which, the plaintiff introduced
Guy Catlin as a witness, who testified that in the month of August,
1820, Oel Billings told him that the receipt whereon the plaintiff
seeks a recovery was not included in the settlement with Dan C.
Dodge in September, 1815, but was excepted out of it, and that

*Bennington,*
*May,*
*1824.*

*Dodge*
*vs.*
*Billings.*

another man ought to account to said Dodge for said receipt, which he understood to be the said Copp.

Jacob Collamer, on the part of the defendant, testified that he was present at a conversation between Oel Billings and Guy Catlin, in August, 1820, and that he understood the said Billings to say that the receipt on which the plaintiff claims a recovery was not included in the settlement made with Dodge in September, 1815—that he, the defendant, was not to account for the receipt, but that the same was given on account of said Copp, who had accounted to said Dodge for it.

Whereupon the Court decided, that the whole declaration of said Billings was to go to the Jury, and to be taken together, and have equal weight, unless there were circumstances or evidence tending to detract from the weight of one part of it more than the other.

The plaintiff filed a motion to set aside the nonsuit and for a new trial, on which the cause was heard at February term, 1824.

*Bennet* for the plaintiff.

The plaintiff is entitled to have the nonsuit set aside on the following grounds :—

1.—It was in no way essential to prove the entry of the goods by the Collector. The *gist* of this item of the plaintiff's claim is the payment of the duties by Dodge. He might have paid the duties, and an omission of the entry upon the books of the Custom-House. That is altogether a matter between the Collector and the Government.

1.—If necessary to prove the entry, the decision of the Court requiring the minutes of the entry themselves to be produced, if they could be produced, is believed to be incorrect. The minutes of the entry are no matter of record, and if produced, would de no evidence in the cause. They could only be used to refresh the memory of the collector. 3 Vol. U. S. L. p. 155, sec. 21. 4 Dallas 415.

3.—If the minutes of the entry were evidence, and the *best* evidence of the fact, yet the rule of law requiring the best evidence of a fact is dispensed with where the fact is drawn *collaterally* in question, as in this case. 1 Phi. Evi. 168. Anth. N. P. 40, 41, 191.

4.—As to that point of the decision requiring the goods to be

delivered in the city of New-York, before a recovery can be had *Bennington,*
*May,*
*1824.*

Dodge
*vs.*
Billings. for the duties, we think it wrong. Dodge's action accrued upon the payment of the duties. The delivery of the goods in New-York, was by no fair construction of the letter of instructions a condition precedent, neither can such condition impliedly arise out of the transaction. Besides Dodge has a lien upon the goods until paid or tendered his disbursements.

5.—The receipt given in evidence by the plaintiff to support the special count, furnishes evidence of a contract, and gives a right of action *per se.* It acknowledges the receipt of a certain sum, and promises to account for, that is, pay it in a particular way. This receipt is very different in its legal operation from one which acknowledges the receipt of a sum of money on some *specific* demand. In the latter case, no action, it is admitted, can be sustained. The application, in the eye of the law, is already made—the claim upon which it was made extinguished. No promise can be raised to account for it, even though the original demand may be paid a second time.

6.—No parol evidence can be admitted to vary or contradict *this receipt* on contract.

It is admitted to be the law in England, in the State of New-York, and by the modern decisions, in this State, that receipts may be contradicted by parol; they are treated as exceptions to the general rule. But in all those cases the receipt furnishes evidence of the admission of a fact simply; and not of a contract. It is like the cases where a bill of lading states goods to have been shipped in *good order*, still the master who signed it, may show by *parol* that they were damaged.

In the 3d John. R. 319, M'Shinstry v. Pearsall, is a question much like the present. A receipt is given in evidence in these words: " Received of Capt. E. Smith 50 barrels of provisions *for account* of David M'Shinstry.—Robert Pearsall." Parol evidence was offered, to give an operation to this receipt, and admitted. Spencer J. who delivered the opinion of the Court, says:—" If the receipt had been in terms more explicit than it is, it would have been open to explanation—I mean that kind of explanation not directly contradictory to, but consistent with it." Here the Court treat this receipt as a contract, and apply the same principle in this respect, which is applicable to other contracts. It had long before

*Bennington,*
*May,*
*1824.*

*Dodge*
*vs.*
*Billings.*

been well settled in that State, that receipts, strictly speaking, might be even contradicted by *parol.*

The evidence admitted by the Court directly contradicted the written evidence, inasmuch as it changed the parties to the receipt, making it the receipt of Copp.   11 Mass. R. 35, 54.

On these points we think the plaintiff entitled to a new trial, however it may be as to the other points in the case.

*Everett* for the defendant.

The case does not state that any evidence was offered, and admitted or rejected by the Court, but that the Court decided certain abstract principles : the effect is to give to the party excepting an advantage, which a full statement of the case would not give him.   The case'should have stated what evidence the party offered, so that the Court might see whether it is within the principle decided, and whether the party has been injured by the decision. But we will examine the exceptions as they appear in the case.

1.—That the Court decided, that it was necessary for the plaintiff to prove an entry of the goods at the Custom-House.

The contract was not to pay the amount of duties chargeable upon the goods if entered, but to pay the duties on the entry.   It was not contemplated that the plaintiff might smuggle the goods, and then claim for duties saved, as for duties paid.   As, therefore, there could be no claim for the duties, if there was no entry of the goods, proof of the entry was indispensable.

2.—The second exception is to the decision of the Court, that the entry could be proved only by the minutes of the entry from the books of the Custom-House, or by showing that the parties had liquidated the sum and agreed on the amount.

This was the best evidence of the fact to be proved, and was, therefore, required by the general rule.   But in this case it was peculiarly important to the rights of the parties, that·this evidence should be produced.   How could the goods be otherwise identified, or the amount of duties ascertained?   But the plaintiff did not offer evidence of any kind to prove the entry of the goods, going on the ground that it was unnecessary to prove the fact in any way.   This exception, therefore, does not belong to the case, and is to be laid wholly out of it.

Bennington,
May,
1824.

Dodge
vs.
Billings.

3.—The third exception is to the decision of the Court, that it was necessary for the plaintiff to prove the delivery of the goods in New-York agreeably to the terms of the contract, before he could call on the defendant for the amount of the duties.

The delivery of the goods in New-York was expressly made a condition precedent. The language of the letter of instructions is clear—" If you will take the goods, enter them; secure the duties, forward them to Robbins and Frost in New-York, and place them in their hands subject to my order, I will be accountable to you for the duties."

The plaintiff clearly had no lien on the goods as a carrier: for this was waived by the express terms of the contract—the goods were to be delivered in New-York, and the plaintiff was to be paid in Montreal, where both parties then resided.

It follows that the exceptions taken to the decision of the Court, in relation to the plaintiff's claim for duties paid on the goods, are wholly destitute of foundation ; and it remains only to examine briefly the exceptions taken to the decision of the Court, in relation to the plaintiff's claim on the receipt for the Bill of Exchange.

It is obvious that the receipt *per se* furnishes no ground or cause of action—it contains no promise to pay, but to account for the sum specified on notes which the defendant held against the plaintiff. The plaintiff it seems was aware of this, and in order to entitle himself to recover, produced a receipt which the defendant had subsequently given him in full of all demands, to show that the notes on which the receipt was to be applied had been paid, otherwise, and no application of the receipt made. This furnished no evidence how all demands were paid ; and when the plaintiff produced the defendant's receipt of the same tenor and date, a settlement simply between the parties was proved.

The defendant then offered parol evidence to prove that at the time that he, the defendant, gave the plaintiff the receipt for the Bill of Exchange, it was agreed and understood between the parties, that said receipt was to be accounted for on demands which one William Copp held against the plaintiff, then in the hands of the defendant, as agent for Copp. This evidence was admitted by the Court ; and in any view which can be taken of the question was correctly admitted. The evidence did not contradict the re-

Bennington,
May,
1824.

Dodge
vs.
Billings.

ceipt, nor vary the tenor of it. The amount of the receipt was to be accounted for on demands which the defendant *held* against the plaintiff—not on demands in the name, or in favor of the defendant. The receipt then, in its literal meaning, applied as clearly to the demands which the defendant held in favor of Copp as to demands in favor of the defendant.

But parol evidence is admissible to vary the tenor of a receipt. 3 John. 316. 5 *id.* 68. But it is immaterial whether the decision of the Court was or was not correct; for the defendant did not avail himself of the decision—he produced no evidence in consequence of it. Beside, the exception taken to this decision is rendered immaterial by the plaintiff's receipt: for this is as good evidence of a discharge of the plaintiff's claim, as the defendant's receipt is of a discharge of the defendant's demands against the plaintiff. But to do away the effect of this discharge or receipt, the plaintiff introduced evidence of the confession of the defendant that the receipt for the Bill of Exchange was not included in the settlement of 1815, and the confession proved was that the receipt was not included in the settlement of 1815, because it belonged to Copp to settle it, and he had settled it. The Court decided that this confession should be taken altogether. This decision is supported by numerous authorites. Phil. Ev. 79, 80. 3 John. 427, Carver *v.* Tray. 10 *id.* 38, Fenn *v.* Lewis—*id.* 365, Audit *v.* Brown. 18 John. 227, Smith *v.* Ives. 5 Taunt. 92, Bunn *v.* Chandler.

AIKENS J. delivered the opinion of the Court.

This case comes before the Court on a motion for a new trial, filed by leave of the Court, after a nonsuit on trial at the February term, 1823, and is founded upon exceptions taken to certain opinions of the Court expressed on that trial, and which appear in a case made.

A motion for a new trial is an application addressed to the legal discretion of the Court. It is a call upon the Court to reconsider and reverse a judicial opinion, upon some fact shewn or offered to be shewn, which has deprived the applicant of some advantage to which the fact would legally entitle him. It is indispensably necessary, for the due exercise of this discretion, in relation to the rejection of testimony on trial, that it should appear, that testimony was *offered*, and what the testimony *was*, so far as to shew its material-

ity and tendency to prove the issue : For otherwise, the Court would run great hazard of doing an injustice to the opposite party, and, at the same time, of rendering no benefit to the applicant him- self.    I will illustrate this idea by an hypothetical case.    Suppose an affiliated bastard in Court, claiming title as heir to his putative father, under the statute of the 29th Oct. 1822, and the question to be, whether affiliated or not—that to prove that fact, he should offer in evidence a certified copy of the instrument of affiliation under the seal of the Probate Court.    An objection should be taken to the evidence, on the ground that the original ought to be produced, and the court should, for that cause, reject it,—that, on the exception coming up, I should be of opinion that a certified copy *was* legal evidence ; but on looking into the case, I should perceive that the instrument was witnessed by only *two* witnesses, whereas the statute requires *three*.    Now it is quite clear, that, if the opinion had come up in the shape of an abstract proposition, and I had proceeded to act upon it, I should not only have done an injustice to the defendant, but a very *ill* service to the plaintiff.    It is no answer to this objection, to say that the Court volunteered an opinion so broad as to render the offer hopeless.    It is true it would be mere form for the purposes of *that* trial, but not so for the purpose of enabling the Court to judge of the propriety of another.    Nor can it be said that the Court are presumed to *know* the facts from having tried the cause ; for, in this government, the presumption is too often contradicted by fact, to warrant any such rule.    If a party, from wrong advice or other cause, keep back material testimony in his power, and a verdict pass against him, the law will not indulge him with a new trial, though his cause may be ever so just, because of the vexation to the opposite party    So where the error is in the Court, after a verdict, or nonsuit on trial, the plaintiff must shew by his case, that he has been deprived of the use of existing facts which make at least a good *prima facie* cause of action, before the Court can permit him to call further on the defendant. It is not sufficient that the exception shew that a set of facts, which by possibility may exist, and which would amount to a good *prima facie* case, have been excluded by the opinion.    It must appear that the party had the *proof* of their existence in his power, and has been actually deprived of it by the decision ; but this can be no

Bennington,
May,
1824.

Dodge
vs.
Billings.

otherwise done, than by such an offer of it on the trial, as will enable the party to have them certified up in his case. Indeed there is the same reason and the same necessity for this rule, on a motion to set aside a nonsuit, that there is for the rule, that a party petitioning for a new trial on the ground of newly discovered testimony, should shew to the Court the nature, extent, and pertinency of the testimony discovered.

It will be but a waste of time therefore, to discuss the merits of the first and second exceptions contained in the case.

It does not appear from the case but that all the testimony was admitted by the Court, which was offered by the plaintiff: And the remaining exceptions are taken to opinions upon the testimony admitted.

The plaintiff's specification contains two items.

The letter of instructions, of the 7th July, 1817, is the only evidence which I am enabled to perceive, from the case, to have been offered in support of the first item. This letter, without the existence of other proofs, (which is left to conjecture) does not amount to a *prima facie* cause of action.

The third exception is to the opinion of the Court, in relation to the legal effect and operation of the receipt, for a Government Bill, dated the 9th November, 1814, which is the foundation of the plaintiff's second specification. That opinion is, no doubt, correct. It is supported both by reason and the authorities.

The fourth is to the opinion, that parol evidence was admissible to show that the notes mentioned in that receipt, on which the defendant agreed to account, were notes in favor of one Copp, and then in the hands of the defendant, as the agent of Copp. I see nothing in this evidence, inconsistent with the very terms of the receipt itself. The expressions are, "*to account for on notes I hold against him.*" It is *not* that clear, explicit, and unambiguous thing which the plaintiff contends. The object to which the accountability is confined, is as little defined as possible. The word "*hold*" does not necessarily imply an ownership of the thing holden, and might, without violence to language, be adopted by an agent or consignee, as well as by an owner. And if the property of the notes, holden by the agent at the date of the receipt, was not in him, he necessarily held them *as agent*, if he held them lawfully.

*Bennington,*
*May,*
*1824.*

Dodge
*vs.*
Billings.

If the defendant did not on that occasion hold notes against the plaintiff, in his own right, (of which there .is certainly a possibility) any other decision might have done great injustice to the plaintiff himself. For the defendant made himself accountable for the avails of the bill in no other way, than by an application thereof *on notes* which he held against the plaintiff. This opinion is therefore unexceptionable.

The next evidence offered by the plaintiff was the receipt from the defendant, dated September 24th, 1815, in full of all demands of every name or nature to that date : Whereupon the defendant gave in evidence a like receipt from the plaintiff to him, of even tenor and date.

These two receipts, interchangeably executed, are proof of a final settlement between these parties, on the 24th September 1815, and a mutual release and discharge of all demands, of whatever name or nature, existing between them, to that date. This last mentioned receipt necessarily amounts to a full discharge, to the defendant from the receipt of the 9th November, 1814, (if, as the plaintiff contends, it was his own matter)—unless it was competent for the plaintiff to *contradict* the clear and necessary import of his own discharge, by *parol* testimony. This is indeed questionable ; tho' it appears from the case, that the Court *did* permit him to make the attempt.

The fifth and last exception is to the opinion of the Court, in relation to the testimony of the declarations of the defendant.

There can be no doubt as to the law on this point: and there is as little doubt, but that the decision of the Court was in strict conformity to it.

The motion is denied.