CALEDONIA,
March,
1843.

McGregor
v.
Bugbee.

---

WILLIAM McGREGOR v. HARRIS BUGBEE.

B. N. and K. executed notes to McG. on the purchase of a saw-mill. Afterwards B. sold to N. his share, without making any contract that N. should indemnify him against the notes to McG. N. and K. afterwards sold the mill to G.; — *Held*, that B. could not defend against the notes he gave to McG. in consequence of any executory contract between McG. and N. to which B. was not a party.

A parol contract between McG., N. and G. might be varied or controlled by them before it was executed.

A receipt or writing is the best evidence of a contract, and is not to be controlled by any oral testimony relating to the contract, unless the contract evidenced by the writing or receipt is rescinded.

N. could lawfully dispose of the notes or property received on his sale to G. without applying the proceeds to the benefit of B.

ASSUMPSIT, on a joint and several promissory note, for one hundred dollars, signed by defendant and Myron S. Kimball and Ethan H. Nichols, payable to plaintiff in six years from date, with interest, dated March 12, 1834. Plea, general issue, and trial by jury.

On the trial in the county court, the defendant offered Myron S. Kimball, he being first duly released, as a witness, — the execution of the note being first admitted — who testified that the note sued, together with six other notes of one hundred dollars each, which notes were payable, the first in one year from date, and the others yearly after, in succession,

were executed by the defendant and said Myron S. Kimball and one Ethan H. Nichols to the plaintiff, and were all of like description, except as to the times when payable. The consideration of these notes was a saw-mill, at that time sold and deeded to defendant and Kimball and Nichols by the plaintiff; and the plaintiff received back at the time, a mortgage deed of the saw-mill, to secure the payment of the said notes. In February, 1836, Bugbee sold his interest in the mill to Nichols, and on the 5th of March, 1838, Kimball and Nichols sold the mill to one Lewis Gilman, for seven hundred dollars, and received one hundred and fifty dollars down, and Gilman's notes, secured by a mortgage of the mill, for five hundred and fifty dollars, which notes were made payable to Kimball and Nichols, with interest, annually, the first for one hundred dollars in one year from date, and the rest, with the exception of the last note, for one hundred dollars each, and the last for fifty dollars, payable yearly, in succession, there being six of said Gilman's notes. The sale to Gilman was under the following circumstances. At the time of the sale, and before it was consummated, the plaintiff, McGregor, was called in, Gilman, Nichols and Kimball being together, for the reason that Gilman was unwilling to make the purchase unless the old notes and mortgage between Kimball and Nichols and McGregor could be so arranged that they should be no incumbrance on the mill, and Kimball and Nichols were desirous to sell the mill and close up their other business, as they were about leaving the country; and McGregor and Kimball and Nichols, on that occasion, made and entered into the following contract, viz: that the Gilman notes should be received by McGregor in payment of the old notes, and McGregor was to wait until the new notes were due, and if they were paid he was to have no recourse to the old notes, but they were to be considered as paid and extinguished; McGregor holding both sets of notes and mortgages. Among the considerations of this contract was the fact that the last set of notes exceeded what was due on the first set, by a number of dollars, and the last set were on annual interest and the first payable with simple interest. The notes and mortgages were not then transferred to the plaintiff, nor was the contract in any manner closed except its terms settled, but the business

CALEDONIA,
*March,*
1843.
————
McGregor
*v.*
Bugbee.

was to be consummated very soon afterwards. On the 18th of April, 1838, Kimball took a receipt of that date from McGregor, which is as follows:

"Received of Myron S. Kimball two promissory notes, 'given for one hundred dollars each, the first payable in two 'years from date, the second payable in four years from date, 'and made payable to Ethan H. Nichols and M. S. Kimball, 'dated March 5th, 1838, both given on interest annually, 'signed by Lewis Gilman, to account for as follows, viz: 'Whereas I hold against said Kimball three promissory notes, 'all dated March 12, 1834, given for one hundred dollars 'each, on interest, and made payable to William McGregor, 'signed E. H. Nichols, Harris Bugbee, and M. S. Kimball, 'the first due March 12, 1838, the second due March 12, '1839, the third due March 12, 1840. As to the last de- 'scribed notes, Miron S. Kimball is to pay me the one-half, 'amounting, principal and interest, to one hundred and 'eighty-six dollars, the 12th of March, 1838. Now I hereby 'agree that if said notes are paid by Gilman to me, I am to 'indorse the one-half of the last described notes satisfied; if 'not paid, then said K. is to pay me, and give up this re- 'ceipt, by giving him up said Gilman's notes, on demand.

WILLIAM McGREGOR.

"Attest, Ethan H. Nichols."

At that time it was talked over, and distinctly understood, and agreed, by McGregor and Kimball and Nichols, that the business should soon be consummated, in accordance with the foregoing contract, between McGregor and Nichols. The plaintiff then read in evidence a receipt executed by McGregor to Nichols, dated the 17th of September, 1838, of the following tenor:

"Received of E. H. Nichols four notes against Lewis Gil- 'man, all dated March 5, 1838, and all with interest, an- '-nually, one for the sum of fifty dollars, payable in six years 'from date, one for the sum of one hundred dollars, payable 'in five years from date, one for the sum of one hundred dol- 'lars, payable in three years from date, and the other for the 'sum of one hundred dollars, payable in one year from date, 'with fifty dollars indorsed on the last described note, July '19, 1838, which I promise to account for on a note I hold 'against said Nichols of this date, for ninety-eight dollars

'and fifteen cents, and the balance on notes I hold against 'said E. H. Nichols, Harris Bugbee, and Myron S. Kimball, 'if said notes against said Gilman are paid; said notes 'against Gilman payable to said Nichols and Myron S. Kim-'ball or their order.          WM. MCGREGOR.''

It appeared that all the Gilman notes and the mortgage were at that time in the hands of McGregor. It was then ruled by the court that the said receipts must govern the case, and that the foregoing parol evidence, in reference to the contract between the plaintiff and Kimball and Nichols, was inadmissible. The plaintiff then proved that Nichols held his receipt but a few minutes, or at most but an hour or two, and then gave it up to McGregor, and it was then agreed between them that McGregor should keep the Gilman notes receipted in the Nichols receipt, and should collect them, and apply the proceeds upon a liability of Nichols to McGregor upon certain covenants in a deed from the former to the latter. In this state of the case, defendant contended that the parol evidence excluded by the court should be admitted to go to the jury, but the same was excluded by the court. Besides the evidence before detailed, it was also proved, by the defendant, that McGregor knew of, and was present at, the sale made by Bugbee to Nichols of his interest in the mill; and that previously, and subsequently to the sale from Kimball and Nichols to Gilman and the contract between Kimball and Nichols and McGregor, Kimball notified defendant of what was doing and done, and consulted with him in relation to it. The defendant then proved that the three Gilman notes, which first became due, had been fully paid when they became due, and that the aforesaid three Gilman notes were all that were due; that no application or indorsement of the moneys, thus received by McGregor, had been made by him on the old notes, and none of them given up. Defendant further offered in evidence the repeated declarations and admissions of McGregor to Bugbee and others, since the execution of said receipts, and since the last agreement, aforesaid, between Nichols and McGregor, that he, McGregor, was bound to wait until the Gilman notes were due, and if they were paid he had no right to call on Bugbee, and no claims on him. For the purpose of showing a direct contract to that effect, between McGregor and said

CALEDONIA,
March,
1843.

McGregor
v.
Bugbee.

Bugbee, the defendant also offered to show that Nichols had no right to control the Gilman notes, or any part of them, except in accordance with the terms of the agreement first made with McGregor, by Kimball and Nichols. A verdict was then directed by the court for the plaintiff, for one-half of the note sued and the interest. The court informed the counsel that if the evidence last offered should go to the jury they should give in charge that it could not control the written contract between the parties, and so, also, of all that passed between the parties before and after the times of the execution of the receipts, unless they should be satisfied that, after the execution of the receipt, the parties rescinded that contract and made another contract such as defendant contended for; and that it was competent for the plaintiff and Nichols, in the manner specified, to apply those notes to other liabilities of Nichols to McGregor, it being admitted that the notes were in the possession and control of Nichols by the consent of Kimball and with the knowledge of Bugbee. Whereupon a verdict passed for the plaintiff to recover one-half of the amount of the note sued, and the defendant excepted to the decisions of the county court.

————— —————, for defendant.

1. The first question is whether the county court erred in rejecting the parol evidence offered by defendant. 1. We contend they did, and upon this part of the case cite the following authorities. 2 Stark. Ev. 544, 545, 554, 555, and note on last mentioned page; 12 Pick. R. 371; 1 Mason's R. 9; Chitty on Contracts, last edition, 108, 109; Greenl. on Evidence, 354, note 1. 2. We contend that this parol evidence should have been admitted, inasmuch as the bill of exceptions shows that "Nichols held his receipt but a few minutes or, at most, but an hour or two, and then gave it up to M'Gregor, and it was then agreed between them," &c. by parol.

2. The second question in the case is, whether the county court erred in taking the case from the jury and directing a verdict for the plaintiff, ruling out the evidence offered by the defendant in regard to the admissions of the plaintiff, &c. On this point the following cases are cited. 5 Vt. R. 107; 6 do. 191; 2 Aikens, 240.

3. The third question in the case is, whether the contem-

plated charge of the court was correct. On this head we cite the following authorities. 11 Vt. R. 367 ; 3 Kent's Com. 18 ; *Steinman et al.* v. *Magnus,* 11 East, 390 ; *Cock-shott* v. *Bennet,* 2 Term R. 763 ; *Good* v. *Cheeseman,* 22 Com. L. R. 89 ; 19 Com. L. R. 94 ; 20 John. R. 78 ; 16 John. R. 86.

The court below say " it was competent for plaintiff and Nichols, in the manner specified, to apply those notes to other liabilities of Nichols." We contend there is error in this, inasmuch as there was a full execution of the original contract, made by all parties, when the notes in Nichols' hands were passed to M'Gregor. The agreement between Nichols and plaintiff was made in fraud of the previous contract, and was a fraud upon Gilman, Kimball and defendant. 11 Vt. R. 60.

4. We insist that the agreement, set up by defendant, and executed in the manner described in the bill of exceptions, is a sufficient defence to the action, by the way of accord and satisfaction, or accord and mutual promises, or conditional payment ; and that a technical release was unnecessary. 2 Vt. 209 ; 3 Johns. Cas. 243 ; 1 Dig. N. Y. R. 9 and 10, and cases cited ; Chitty on Contracts, last edition, 760 to 779 ; 5 Vt. R. 416 ; *Bryant* v. *Gale,* 2 Metcalf's R. 283 ; Chitty on Bills, last edition, 196 ; 8 John. R. 389 ; 15 Pick. R. 534 ; 18 Pick. 253, 414.

*D. Hibbard, jr. & B. N. Davis,* argued for the plaintiff, and, to the point that an agreement never to pursue Kimball upon the notes would constitute no defence for Bugbee, cited 5 Vt. R. 518 ; 8 T. R. 168 ; 1 Swift's Dig. 302 ; *Pinney* v. *Bugbee,* 13 Vt. R. 209 ; *Spencer* v. *Williams et al.* 2 Vt. R. 209.

To the point that the parol testimony, offered by the defendant, was properly excluded by the county court, as its tendency was to contradict the written receipts, they cited *Bradley* v. *Bentley,* 8 Vt. R. 243 ; *Reed* v. *Wood,* 9 do. 285; *Isaacs* v. *Elkins,* 11 do. 679; *Ripley* v. *Page,* 12 do. 353.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This action is brought to recover the amount of one of six promissory notes, executed by the de-

fendant, Ethan H. Nichols, and Myron S. Kimball, to the plaintiff, on the 12th of March, 1834.  Two of the notes were heretofore sued in the name of Pinney as indorsee of M'Gregor, in the county of Orleans, and a decision was had in that suit, which is reported in 13 Vt. R. 623.  The defence is not presented, in this case, in as favorable a point of view as it was in that.  Indeed, one strong, prominent fact, which appeared in that case, was not proved in this, viz : the insolvency of Nichols, and his agreement to indemnify the defendant from the note now in controversy, and the other notes.

From the case as now presented, we cannot see that the defendant either proved or offered to prove any defence whatever to the notes.

The defendant, when he sold his interest in the mill to Nichols, in Feb'y, 1836, did not require Nichols to indemnify him against the six notes which had been executed to the plaintiff, and for any thing which appears in this case, the defendant may have received of Nichols the full value of the premises, viz : the third owned by him ,and which he deeded at that time.  The testimony did not prove, or tend to prove, that the note in suit had ever been paid by Nichols, or that any contract had been made between Nichols and the defendant, Bugbee, with the assent of M'Gregor, by which Bugbee was to be exonerated from the payment of the notes, and the plaintiff to look to Nichols for the pay.  This of course disposes of the defence.

The agreement, which was proved by parol, made on the 5th March, 1838, was for the benefit of Gilman, principally, to which the defendant was not a party, and moreover was entirely controlled by the contract, evidenced by the receipt executed in September, 1838, by the plaintiff to Nichols.

The bill of exceptions is not drawn up with that precision and accuracy which is desirable.  The practice of detailing, in the bill of exceptions, all that passes at the trial, is too common.  It would be better if the judges who allow these exceptions,—and we are all faulty in this particular,—would strike out all the superfluous matter which is usually inserted by the counsel, inasmuch as it tends rather to confuse and obscure the real point in controversy.

The only questions of law which were decided by the court below appear to be these, that the receipt executed by the plaintiff to Nichols, in September, 1838, was the best and only evidence of the contract between them, and unless this was rescinded, and another one subsequently made, as contended for by the defendant, it could not be altered, varied or explained by parol evidence, and further that Nichols had an unquestionable right to receive the pay on the notes given him by Gilman, or control, or dispose of them as he thought proper, as the defendant was not proved to be a party to, or any way interested, legally, in the transactions between the plaintiff and Nichols and Gilman. Whether on proof of other facts, the defendant can succeed either at law or equity in compelling an appropriation of the avails of the Gilman notes to his benefit, is not a question now before us.

The judgment of the county court is affirmed.