<sup></sup> THOMAS HITT *v.* VOLNEY P. SLOCUM.

*Receipts. Evidence.*

Receipts not under seal are always open to explanation and even to contradiction by parol evidence. They are not contracts, so as to be the exclusive evidence of the intention of the parties.

*Dictum,* Evidence is inadmissible to impeach the general character of a party as a book-keeper.

BOOK ACCOUNT. The auditor reported and found that there was nothing due from either party to the other to balance book accounts between them, and found for the defendant to recover his cost.

The auditor further reported that on the trial of this case the plaintiff was sworn as a witness and testified to the correctness of the accounts upon his books produced and claimed to be his original books.

The defendant offered evidence to impeach the general character of the plaintiff as a book-keeper, and proposed to ask of witnesses the following question, viz: "What is the character of the plaintiff in the community where you reside, for fairness and correctness as a book-keeper?" To this question the plaintiff objected, but the objection was overruled and the defendant was allowed to ask the question. In reply to the question several witnesses gave evidence tending to show that the general character of the plaintiff for correctness as a book-keeper "was not upon a par."

The auditor further reported that the defendant in this case commenced a suit at Granville in the State of New York, before a justice of the peace, in which he declared upon a note for twenty-five

dollars, payable to Geo. Osborn, and also upon "an account for goods, wares and merchandise sold and delivered, and for labor and services, board and lodging, money paid out and expended, money lent, and for commission in buying property." That the defendant (Hitt) appeared and put in his answer in writing containing a general denial and notice of set-off, work and labor, goods, wares and merchandise delivered, cash lent and advanced, account against a hired girl which it was alleged that the plaintiff (in that suit) had agreed to pay, and for damages done to a certain grey horse by using him unkindly and unskilfully. And that each party claimed that there was a balance due to him from the other party, on their general account and dealings.

When the parties met for trial negotiations for a settlement were set on foot, which resulted in an agreement that all the matters in controversy between the parties should be settled except the claim of Hitt for damages to the horse, and that Slocum should stipulate in writing to take no advantage of the statute of limitations upon said claim; the Osborn note to be given up, and each party to pay his own costs.

Slocum thereupon gave up the Osborn note, and signed an agreement in writing not to take advantage of the statute of limitations upon said claim for damages to the horse, which agreement was delivered to Hitt. And Hitt gave to Slocum a receipt for the Osborn note, to apply on account. No other papers were passed between the parties, or were delivered by either party to the other at the time, and no entries were made at the time by either of the parties upon their books, but Hitt subsequently credited Slocum with the amount of the Osborn note given up.

The plaintiff (in this case) insisted that as matter of law the receipt above described was conclusive evidence that the accounts of the parties were not settled or intended to be settled, and that the auditor could not legally find a settlement upon oral testimony in opposition to the receipt, but the auditor decided otherwise, and found the fact of a settlement upon the testimony of persons who were present and heard or took part in the negotiations for the same. The plaintiff excepted to the report.

On the hearing upon the auditor's report, at the September Term,

Hitt *v.* Slocum.

1864, KELLOGG, J., presiding, the court decided that the plaintiff's exceptions should be overruled, and that the defendant was entitled to a judgment in his favor on the report, and rendered judgment accordingly. To this decision and judgment the plaintiff excepted.

*Fayette Potter* and *J. B. Beaman,* for the plaintiff.

*J. B. Bromley* and *R. C. Betts,* for the defendant.

ALDIS, J. 1. The receipt did not purport to be a written statement of the agreement of the parties as to the settlement. It was only an acknowledgment of the receipt of the Osborn note to apply on account. Standing alone it would not tend to show a settlement, but the contrary, and as evidence tending to disprove a settlement it was admissible for the plaintiff. But receipts not under seal are always open to explanation, and even to contradiction, by parol evidence. They are not contracts, so as to be the exclusive evidence of the intention of the parties. *Nye* v. *Kellam,* 18 Vt. 594; *McDaniels* v. *Lapham et al.,* 21 Vt. 222; *Sparhawk* v. *Adm'r of Buell et al.,* 9 Vt. 41; *Burnap* v. *Partridge,* 3 Vt. 144; *Hutchins et al.* v. *Olcutt,* 4 Vt. 549.

The case shows that the agreement of the parties in regard to a settlement, if there was any, was not reduced to writing. It was clearly proper therefore to receive parol proof to show a settlement.

2. It is said the auditor should have reported the facts in regard to the settlement, or the evidence of it.

It would have been improper for the auditor to have reported the evidence. His report should state only the facts which he finds from the evidence.

He does find and sets forth the settlement, and states it so fully as to show that it included the matters for which the plaintiff now sues.

3. It is further urged by the plaintiff, that the question put to the witnesses on the trial, viz : " What is the character of the plaintiff in the community where you reside for fairness and correctness as a book-keeper", was improper.

The credit of account books depends upon their being a daily record of the business transactions of the party who produces them—of

Hitt *v.* Slocum.

the entries being made cotemporaneously with the transaction of the business—of their appearing to be kept so that the entries are made in the order of time, without blanks or spaces being left in which false charges might be written,—in being honestly and fairly kept, free from erasures, alterations or other signs of fraudulent practice. A dishonest man may keep fair books, upon the face of which everything appears honest and correct, and yet continually insert false charges. How shall this be made to appear? Ordinarily no one can be supposed to know this but the person who has been defrauded by such practices,—who has seen the books, the false charges, and knows that they are false. The public generally would know nothing about it and have no means of knowledge. The honesty and accuracy of a man's account books do not lie open to the world like his character for truth. That appears constantly before men—is tested by daily intercourse and conversations with his neighbors, and hence his reputation among his neighbors in this respect is admitted as evidence of what his real character is.

But to extend this rule of law to a man's reputation for keeping honest and correct books of account would be going farther than the reason of the rule, or any correct practice in the courts would justify.

No authorities have been cited to sustain the admission of such evidence; nor are we aware that there has been any practice to support it.

The consideration of this point is not necessary to the decision of the case, as the fact of settlement defeats the action. But as the point was argued on the hearing we have thought it proper to make these intimations in regard to it.

Judgment affirmed.