HIRAM DROWN'S GUARDIAN *v.* GEORGE W. CHESLEY'S ESTATE.

May Term, 1917.

Present:    WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 2, 1917.

*Receipts—When Open to Explanation or Contradiction by Parol Evidence—Construction—Burden of Proof—Accord and Satisfaction—What Constitutes—Questions for Jury—Infants—When Promise to Pay for Services is Implied.*

Receipts not under seal, although written "in full settlement," are not contracts so as to be the exclusive evidence of the intention of the parties, but have the force of evidence of full payment and satisfaction sufficient to make a *prima facie* defence to the claim, and are always open to explanation or even to contradiction by parol evidence.

A receipt that embodies a contract between the parties cannot be modified or contradicted by parol evidence.

A writing, "Settled up to date with G. W. Chesley for all work, and put it in Barton bank the sum of two hundred dollars," *held*, a mere receipt and not a contract.

By producing a writing purporting to be a receipt for plaintiff's claim, defendant is not relieved of the ultimate burden of establishing an accord and satisfaction; the production of the writing and proof of its execution and delivery is sufficient to sustain the burden until plaintiff produces evidence tending to show that the money was not so received; and if there is evidence fairly and reasonably

tending to rebut defendant's case on this issue, the question is for the jury.

The payment and receipt of money upon an unliquidated claim does not constitute an accord and satisfaction, unless the offer of payment is accompanied by such acts and declarations as amount to a condition that if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that he takes it subject to such condition.

On the evidence, *held*, the question whether there had been an accord and satisfaction was for the jury.

Where an infant comes to live with one who stands in *loco parentis* to him, and remains as a member of the family after coming of age, performing such services as are ordinarily rendered by a child in the family, the law does not imply a promise to pay therefor, but if payment is claimed it must be shown that the services were performed with that expectation and that the recipient so understood or had sufficient cause to believe.

On the evidence, *held*, the question whether there was an implied promise to pay for plaintiff's services was for the jury.

*Sessions* v. *Gilbert*, Brayton 75, and *Raymond* v. *Roberts*, 2 Aikens 204, disregarded.

APPEAL from the disallowance of plaintiff's claim by commissioners upon the defendant estate. Answer, alleging an accord and satisfaction. Reply, a general denial. Trial by jury at the December Term, 1916, Caledonia County, *Butler, J.,* presiding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*Simonds, Searles & Graves* for defendant.

*James B. Campbell* and *David E. Porter* for plaintiff.

TAYLOR, J. This is an appeal from the disallowance of commissioners on the estate of George W. Chesley, formerly of Sheffield, deceased. Plaintiff is the guardian of one Hiram Drown, who was placed under guardianship after the services involved in this action were rendered. The trial in the county court was by jury and resulted in a verdict for the plaintiff. The only exception relied upon was taken by the defendant to the overruling of his motion for a directed verdict.

The principal issues raised by the motion (and the only grounds thereof that are briefed) were: (1) the effect of defendant's evidence introduced in support of his answer of accord and satisfaction, and (2) the sufficiency of plaintiff's evidence to support an implied promise to pay for the ward's services. Plaintiff's reply to defendant's answer of an accord and satisfaction was a general denial concluding to the country. As to the first ground of the motion defendant's claims are thus summarized in his brief: (1) Hiram Drown executed a written contract releasing his entire claim for wages. (2) This contract was never rescinded by the plaintiff, but was affirmed and ratified by him. (3) There was no evidence in the case tending to show any different understanding or agreement.

The evidence tended to show that when Drown was 16 years old he went to live with Mr. and Mrs. Chesley; that his father was dead and his mother poor; that he made his home with the Chesleys for about 18 years; that they furnished his board, clothing and spending money and in other respects treated him as a member of the family, but paid him no wages except as later appears; that while Drown was "mentally below par" he was physically strong and during all the time in question did the work of a hired man, filling a good man's place on a large farm.

Defendant's evidence of an accord and satisfaction tended to show that in April, 1915, some trouble arose between Drown and defendant's intestate; that the latter informed Drown that if he couldn't do "different" he wasn't going to keep him; that there was some talk about pay in which intestate told Drown that he would put $200 in the bank for him, if it would be satisfactory, to which Drown assented; that accordingly intestate went to Barton and deposited $200 in the bank there to Drown's credit; that at her husband's direction and while he was at Barton to make the deposit, Mrs. Chesley prepared and procured Drown's signature to the following writing, which was introduced in evidence: "April 5, 1915. Settled up to date with G. W. Chesley for all work and put it in Barton bank the sum of two hundred dollars. Hiram N. Drown;" that the writing was read to Drown, who said it was satisfactory, was then signed by him and left with Mrs. Chesley; that on intestate's return he handed Drown the bank deposit book. Defendant's evidence further tended to show that when intestate handed to Drown the bank book he told him he could stay if he would behave himself; that

if he stayed he would give him $50 to put in the bank "when he went up in January"; that Drown stayed until January 1, 1916, and the $50 was deposited to his credit as agreed.

Against defendant's objection that he had shown an accord and satisfaction which could not be impeached under the pleadings and the further objection "to any evidence offered to vary the terms of that receipt," Drown was permitted to testify that Mrs. Chesley showed him the paper and told him that it was a receipt; that he didn't know what it was—couldn't read and write; that she read it to him and as she read it he was to receive $200 in Barton bank. In answer to the question, "Now, did she say anything to you about its being .in settlement?" he replied, "I didn't understand it that way," and to the question, "Or read anything to you about its being a settlement?" his answer was, "No." In cross-examination witness said he couldn't tell but that Mrs. Chesley read all there was on the paper; and in answer to the question, "She handed you this paper and you signed it readily and willingly?" he replied, "I w'ant 'willingly. I thought I was going to get some more money."

Defendant says that the writing signed by Drown was a contract, amounting to a release of any claim for prior services; and that in the absence of fraud or mistake it could not be varied or contradicted by parol evidence. If this position is well taken, his claims to the motion must be sustained. If the writing should be construed as a contract it cannot be varied, controlled or contradicted by extrinsic evidence unless fraud or mistake in its procurement are both alleged and proved. *McGregor* v. *Bugbee,* 15 Vt. 734. Here there was no such allegation and plaintiff expressly disavowed any such claim both on the trial below and on the argument in this Court. Defendant relies, in support of the claim that the writing is a contract of settlement and as such is clear and specific, upon *Sessions* v. *Gilbert,* Brayton 75, and *Raymond* v. *Roberts,* 2 Aik. 204, 16 Am. Dec. 698, neither of which is any longer authority on the question at bar. Neither case has been expressly overruled, but both have been disregarded and their holdings repudiated. The statement to which the latter case is cited was not necessary to the decision and Judge Prentiss, in a brief concurring opinion, expressed no doubt but that parol testimony may be given to contradict a receipt. In *Burnap* v. *Partridge,* 3 Vt. 144, where the rule is

laid down that a receipt ·is only evidence of an acknowledgment and is liable to be contradicted or explained by other testimony, it is said, ''This has been repeatedly decided, not only in the courts of this State but elsewhere.'' See, also, *Murdock* v. *Matthews,* Brayton 100.

Receipts not under seal are held in this State to be always open to explanation, and even to contradiction, by parol evidence. They are not contracts so as to be the exclusive evidence of the intention of the parties. *Hitt* v. *Slocum,* 37 Vt. 524; *Earle* v. *Wallingford,* 44 Vt. 367; *Bennett* v. *Flanagan,* 54 Vt. 549. Nor does the fact that the receipt is written ''in full'' or ''in full settlement'' affect the rule. Such receipts are held to have the force of evidence of full payment and satisfaction sufficient to make a *prima facie* defence to the claim, but as not having the conclusive effect of a written contract. *Page* v. *Perno,* 10 Vt. 491; *Stephens* v. *Thompson,* 28 Vt. 77; *Guyette* v. *Bolton,* 46 Vt. 228; *Ashley* v. *Hendee,* 56 Vt. 209. See note to *Dodge* v. *Billings,* 2 D. Chip. 26 (Vt. Repts. Ann. Ed.).

A distinction is made in the cases between writings, however formal or informal, that are simply an acknowledgment of payment and receipts that embody an agreement between the parties. The former are regarded as *prima facie* admissions and not within the meaning of the parol evidence rule; while as to the latter, like other contractual writings, the rule of exclusion intervenes. See 5 Chamb. on Ev. § 3552; *Randall* v. *Kelsey,* 46 Vt. 158. The case last cited involved a receipt in full for services as administrator and cash paid out. It was held that the receipt did not preclude other evidence of the purpose for which it was given, as it did not constitute or import a contract as to anything thereafter to be done nor purport to cover any future transaction.

The true test is, does the writing which Drown signed embody a contract, or is it merely a receipt in full for his work? Clearly it falls in the latter class. As said in *Randall* v. *Kelsey,* it does not constitute or import a contract as to anything thereafter to be done. It mentions no future transaction. In short it is no more than the recital of a consummated transaction and wants the essentials of a contract. Defendant says that by it Drown impliedly agreed to release his claim for wages. But this no more so than in an ordinary case of a receipt in full settlement; besides it was held in *Winn* v. *Chamberlin,* 32 Vt. 318,

that the character of a receipt was not altered by an express agreement to release the settled claim. This case is full authority for the holding that this writing is a mere receipt and not a contract. See, also, *Earle* v. *Wallingford, Bennett* v. *Flanagan,* and *Hitt* v. *Slocum, supra; McLane* v. *Johnson,* 59 Vt. 237, 9 Atl. 837. It is unnecessary to cite cases from other jurisdictions, but in *Komp* v. *Raymond,* 175 N. Y. 102, 67 N. E. 113, will be found an illuminating discussion of this question. . Many of the cases are collected in notes to 10 R. C. L. 1025, and 5 Chamb. on Ev. § 3552.

This holding disposes of defendant's claim that the writing was conclusive evidence of an accord and satisfaction. It is said that the "release" given by Drown is a bar to plaintiff's claim because he did not rescind the settlement and return the consideration thereof, but on the contrary ratified the accord and satisfaction by retaining the money deposited. This assumes that an accord and satisfaction was conclusively established by the writing, which we have seen was not so. The cases cited by the defendant to this proposition relate to a rescission of a contract, or a settlement, for fraud, while here plaintiff is not relying upon rescission of an accord and satisfaction, but insists that there was no accord, without which there could be no ratification. These were questions for the jury, if the evidence warranted their submission.

But the defendant says that plaintiff's evidence was insufficient to rebut the probative force of the "release" and to warrant the jury in finding that Drown did not intend to release his claim. Defendant argues this point with the correct rule as to effect of receipts in full in mind, but apparently misconceives the effect of the *prima facie* defence on the question of burden of proof. The defendant is not thereby relieved of the ultimate burden of establishing an accord and satisfaction. The production of the writing and the proof of its execution and delivery was sufficient to sustain this burden unless and until the plaintiff produced evidence tending to show that the deposit was not received in satisfaction of an accord. But at no time does the burden of proof on this issue shift to the plaintiff. *Rutland Railway etc. Co.* v. *Williams,* 90 Vt. 276, 98 Atl. 85, and cases cited. It follows that if there was evidence fairly and reasonably tending to rebut defendant's *prima facie* case on this issue,

'the weight of the evidence and the disposition of the issue made by it were questions for the jury.

The payment and receipt of money upon an unliquidated claim will not operate as a settlement although the debtor so intended it and would not have paid it if he had not understood that such would be its effect, but in reference to which he made no such condition, if the creditor did not so understand it and would not have received it upon such an understanding. *Brigham* v. *Dana,* 29 Vt. 1. To constitute an accord and satisfaction of such a claim it is necessary that the offer be accompanied by such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that he takes it subject to such condition. *Preston* v. *Grant,* 34 Vt. 203; *Van Dyke* v. *Wilder & Co.,* 66 Vt. 579, 29 Atl. 1016. Then, if the creditor receives the money, he takes it clogged with the condition that the other party attached to it, and it operates as a satisfaction of the claim notwithstanding the creditor does not intend it to have such effect. *Connecticut River Lumber Co.* v. *Brown,* 68 Vt. 239, 35 Atl. 56; *Murphy* v. *Little,* 69 Vt. 261, 37 Atl. 968. See also, *Bianchi Granite Co.* v. *Terre Haute Monument Co.,* 91 Vt. 177, 99 Atl. 875. We think that Drown's testimony relating to the claimed settlement viewed in the light of all the circumstances was sufficient to carry the case to the jury. While his answers in direct and cross-examination were in part conflicting, the fair import of his testimony was that he did not understand that the $200 was all that he was to receive for his work. Considering his mental inferiority and the grossly inadequate compensation offered for 18 years of service, measured even by the intestate's own estimate of its value in fixing future wages, we cannot say that the jury would not be justified in finding, as they evidently did, that he did not in fact understand and in the circumstances was not bound to understand that he was receiving the deposit in full settlement.

It is further urged as a reason why defendant's motion should have been sustained that on all the evidence Drown lived with and worked for defendant's intestate under such circumstances that no promise to pay for his services could be implied. There was no evidence of an express promise to pay wages prior to April 5, 1915, but plaintiff relied upon a promise to be implied from the circumstances. As a general proposition when one

party has rendered to another valuable service, without an express agreement to pay therefor, a promise to pay will be implied. *Lunay* v. *Vantyne*, 40 Vt. 501. However, this rule has its exceptions. If a child, after becoming of age, remains in the parent's service, performing such services as are ordinarily rendered by a child in the family, the law will not imply a promise to pay therefor, the reason sometimes assigned being that merely continuing to reside at home and to labor as before creates no natural presumption that the child has assumed the relation of servant. In such case, if the child would claim payment for services, it is incumbent upon him to show that they were performed with the expectation at the time that he would be paid therefor and that the parent so understood or had sufficient reason to believe. *Fitch* v. *Peckham*, 16 Vt. 150. The same rule applies where an infant comes to live with one who stands in *loco parentis* to him, *Ormsby* v. *Rhoades*, 59 Vt. 505, 10 Atl. 722; and also where, in such case, the child after coming of age remains as a member of the family, *Andrus* v. *Foster*, 17 Vt. 556. It is said in the case last cited that the right to compensation in such cases must depend upon the circumstances of the particular case.

Assuming as the defendant contends (which perhaps the evidence fairly tended to show) that young Drown was taken into the Chesley home and treated as a member of the family, still the case was for the jury on the question of an implied promise to pay for his services. Plaintiff would make a case on this issue if the services were performed under circumstances that justified an expectation on the part of both parties that there was to be pecuniary compensation. *Andrus* v. *Foster, supra*. To say nothing of evidence of certain declarations of intestate capable of being construed as admissions, the length of time that Drown worked after coming of age, some 13 years; the amount and kind of work performed; the fact that intestate in effect discharged him, at the same time having a talk with him about "pay" in which he offered to put $200 in the bank for him; and finally the fact that he paid him for "work" and took a receipt in settlement therefor, all clearly tended to show an understanding on intestate's part that there was to be pecuniary compensation for some part of the services at least. As to Drown's understanding there was direct evidence that he expected such compensation. These facts were sufficient to rebut the presumption,

if it exists in this case, that Drown had not assumed the relation of a servant on reaching his majority. We fail to find that the court erred in overruling the motion.

*Judgment affirmed; to be certified to the probate court.*