### Benjamin F. Andrus and Wife v. Jonathan Foster.

Where a daughter continues to reside in the family of her father after the age of majority, the same as before, the law implies no obligation on the part of the father to pay for her services.

And the same rule applies to cases where the person, from whom the compensation for services is claimed, took the plaintiff into his family, when she was a child, to live with him until she should become of age, and she continues, after that time, to reside in his family, he standing *in loco parentis* to her.

If she claim pay, it is incumbent upon her to show that the services were performed under such circumstances, as to justify an expectation on the part of both that pecuniary compensation would be required.

The right to compensation for services, in such cases, must depend upon the circumstances of each particular case.

In this case the plaintiff, being the niece of the defendant, and taken by him, when she was a child, to live with him until she should become of age, was told by him, when she arrived of age, that she was free to go, if she chose, but that, "if she remained and did well, he would do well by her," and she thereupon continued to reside with him for about six years, as a member of the family, and was uniformly treated as she was before she became of age, neither party keeping any accounts. The plaintiff then left the defendant and went to New Hampshire, and continued to reside there, without any expectation of returning, for about five years, when, at the request of the defendant, she returned and worked for him, and in his family, for about a year. And it was held that she was not entitled to recover compensation for her services during the time, which elapsed after she became of age, and before she went to New Hampshire,—but that she was entitled to pay for her services rendered for the defendant after she returned from New Hampshire.

If the husband and wife are both parties to an action on book account, the wife is a competent witness on the trial before the auditor.

Andrus et ux. *v.* Foster.

In THIS CASE the whole matter in controversy was tried upon a declaration in offset filed by the defendant. Judgment to account was rendered, and an auditor was appointed, who reported, in substance, as follows.

In 1821 the defendant, being childless, took the plaintiff's wife, then Susan Sanderson, who was then about eight or nine years of age, and who was a niece of his wife, to live with him until she should become of age. She continued to reside in his family until she became eighteen years of age, when he informed her that she was free to go,—but told her, that, "if she remained with him, and did well, he would do well by her." Thereupon, being destitute of a home, she consented to stay with him, and worked for him as before, living in the family, as a member of it, and attended school some, and was uniformly treated as she was before she became eighteen years of age; and during this time neither party kept any accounts against the other,—nor were any accounts made up between them until after the commencement of this suit. She continued thus to reside in the defendant's family, and worked for him, with but slight interruptions, and without any specified contract for her work, until about the year 1836, when she left and went to New Hampshire. At the time she left there was no settlement made between her and the defendant relative to her labor, nor was there any talk of pay, or settlement, between them, and she did not then expect again to return and reside in his family. While she continued to reside in the family of the defendant, who was a farmer, she was able to do as much of most kinds of work, ordinarily carried on in a farmer's family, as girls in general. She continued to reside in New Hampshire until February, 1841, when at the *request* of the defendant, she returned, and worked for him, and in his family, until about three weeks before her intermarriage with the plaintiff Andrus,—which took place January 12, 1842.

On the hearing before the auditor the defendant objected to the competency of the plaintiff's wife as a witness; but, she being a party of record in the action, the objection was overruled and her testimony received.

The auditor reported that the labor of the plaintiff's wife for the defendant, after she returned from New Hampshire, as above stated, amounted, with the interest, to $42.75. It farther appeared that the

defendant delivered to her, at the time she was married, and during the summer previous, various articles, including thirty dollars in money, amounting in the whole, as allowed by the auditor, to the sum of $108.14; but the auditor reported that only thirty dollars of that sum was delivered in payment for her labor during that season, amounting, with the interest, to $34.20, and leaving a balance due to her, for that season's work, of $8.55. The auditor farther reported, that, if the defendant was liable to pay the plaintiff's wife for her services rendered subsequent to her becoming eighteen years of age, and before she went to New Hampshire to reside, there was due to the plaintiff, after deducting the whole of the above mentioned sum of $108.14, the sum of $103.67. /

———— for plaintiffs. /

I. Was the plaintiff Susan properly admitted to testify? The statute, Rev. St. 220, § 6,—settles this point as decided by the auditor.

II. Is there not evidence of a contract, sufficient to entitle the plaintiffs to judgment upon the report?

1. The fact that the defendant told Susan, that, if she remained with him and did *well*, he would *do well by her*, raises the presumption that he should pay her what she earned. Chit. on Cont. 544. *Jewry* v. *Busk*, 5 Taunt. 302. *Bryan* v. *Flight*, 5 M. & W. 116. *United States* v. *McDaniel*, 7 Pet. R. 1. *United States* v. *Ripley*, 7 Pet. 18. *United States* v. *Fillebrown*, 7 Pet. 28. *Newell* v. *Ex'r of Keith*, 11 Vt. 214.

2. The burden of proof is upon the defendant, to show that the services were performed without a view to a compensation; for it is a well established principle of law, that, when the services have been performed, the law *implies* a promise, unless the defendant shows that they were performed without a view to such compensation. Chit. on Cont. 541. *Livingston* v. *Ackerton*, 5 Cow. 531. *Jacobson* v. *LeGrange*, 3 Johns. 199. *Bartholomew* v. *Jackson*, 20 Johns. 28. 9 Cow. 647. *James* v. *Bixby et al.*, 11 Mass. 37—40. *LeSage* v. *Coussmaker*, 1 Esp. R. 187. *Farmington Academy* v. *Allen*, 14 Mass. 174. *Guild* v. *Guild*, 15 Pick. 129. *Osborn* v. *Governors of Guy's Hospital*, Str. 728. *Little* v. *Dawson*, 4 Dall. 111, *Lamb* v. *Bunce*, 4 M. & S. 275.

3. If the services were rendered without a view to a compensation, it was a matter of fact for the auditor to find from the evidence before him ; and it is not competent for the court to presume a fact from certain other facts found in the report. *Newel* v. *Ex'r of Keith.* 11 Vt. 214. *Phelps et al.* y. *Wood,* 9 Vt. 399. *Paige* v. *Ripley,* 12 Vt. 289. *Swift* v. *Raymond* ,11 Vt. 317. *Brown* v. *Kimball,* 12 Vt. 617. *Stoddard* v. *Chapin,* 15 Vt. 443.

4. It is denied, that the facts detailed by the auditor authorize the presumption, even, that the services were performed without a view to reward in the nature of a debt.

III. The plaintiffs are, at all events, entitled to recover the balance due for the last year's service.

*J. R. Skinner & L. B. Peck* for defendant.

Foster stood *in loco parentis* to Andrus' wife, and the plaintiffs ought not to recover, unless it was the understanding of both parties that the services were to be paid for. She continued to live with Foster, after she became of age, as a daughter, having no other home, and not expecting to claim pay for her services. She was clothed, sent to school, and treated in all respects as a father, when of sufficient ability, treats his daughter. It is evident, from the situation of the parties, and the circumstances of the case, that neither party supposed there was to be a claim for wages. The work on one side, and the support and clothing furnished on the other, was a voluntary courtesy, which creates no implied *assumpsit.* The labor performed by Mrs. Andrus, after her return from New Hampshire, stands upon the same footing as her previous work. The situation of the parties was the same, and it must have been so regarded by them. Quite a large proportion of the defendant's account accrued for articles furnished after her return and in contemplation of marriage. The intercourse and dealings between the parties were like that between parent and child ; and to make the defendant responsible will be setting a precedent which will lead to litigation and greatly tend to disturb the quiet and peace of families.

The rule, as applicable to cases of this character, was correctly laid down in *Candor's* case (5 Watts & Serg. 513.) It is there held that a child is not entitled to recover wages, for services rendered, from the estate of his deceased parent, unless upon clear and

unequivocal proof, leaving no doubt that the relation between the parties was not the ordinary one of parent and child, but of master and servant. The right to recover in such case ought not to be permitted to rest on an implied promise. If the daughter will seek a recovery against her father for services, she ought to show *affirmatively* that payment was contemplated in the outset. *Wier* v. *Wier's Adm'r,* 3 B. Monroe 647. *Fitch* v. *Peckham, Ex'rx,* 16 Vt. 150. *Alfred* v. *Fitzjames,* 3 Esp. Cas. 3. Law Magazine, No. 5, Apr. 1844, 166.

The opinion of the court was delivered by

REDFIELD, J. The important question in this case is, whether a child, or foster-child, remaining at the house of its parent, after the age of majority, and making that a home, the same as before, and assisting in the household labors, (the child being a daughter,) is entitled to a pecuniary compensation for her labor, the same as a stranger. We think it difficult to lay down any general rule upon the subject. Every case will be more or less affected by its own peculiar circumstances. The amount and kind of labor, the ability and necessity of the parent, the course of dealing between the parties, whether they keep accounts or not, whether the demand for compensation is made early, or is delayed for many years after the relation began, or, as in the present case, after it terminated, these, and many similar circumstances, will be significant indications of the expectation of the parties, at the time of the relation subsisting, which should determine their rights. The matter is, perhaps, as well summed up by Chief Justice Shaw, in *Guild* v. *Guild,* 15 Pick. 129, as it can be. " Such a continued residence of a daughter may, indeed must, be regarded under one of these three aspects; She may be a servant, or housekeeper, expecting pecuniary compensation for services, or she may be a boarder ; expecting to pay pecuniary compensation for accommodations and subsistence; or she may be a visiter, expecting neither to make, nor pay compensation. Perhaps it might be safe to consider the latter predicament as embracing the larger number of cases."

This would lead us to the same conclusion to which the court came in the case of *Fitch* v. *Peckham's Executrix,* 16 Vt. 150. The rule there laid down by the chief justice is, that the law in

Andrus et ux. *v.* Foster.

such cases will not ordinarily imply a promise on the part of the parent to make pecuniary compensation for the child's labor; or on the part of the child to make such compensation for her board. If the child, in such circumstances, bring suit for pay, it is incumbent upon her to show, that, at the time, it was expected by both parties that she should receive such compensation, or that the circumstances, under which the services were performed, were such, that such expectation was reasonable and natural.

In fact, I apprehend the circumstances of each case will usually remove all doubt of the expectation of the parties at the time. In the present case the plaintiff's wife had been brought up from a child by the defendant. At the time she became of age the defendant told her she was free to leave him, if she chose; if she remained with him, and did well, he would do well by her. This was in 1829, or 1830, and she continued to reside with defendant until 1836, and labored most of the time. "She lived in the family, as a member of it, and was uniformly treated as before she became of age." Neither party kept any account against the other; the plaintiff's wife had what she needed for her support, as before, and when she left, neither party expected her to return, to reside any more with defendant. No settlement was made, and no claim for compensation made, until after the intermarriage of the plaintiffs, 12th January, 1842. About the first of February, 1841, she returned to live with the defendant *at his request*, and worked for him until about three weeks before her marriage. During this time the auditor estimates her services at $37.50, and reports that the defendant furnished her with money and other things, such as she needed for housekeeping, to the amount of $108.14. The auditor farther reports, that $30 only of this last sum was paid to go towards the last term of labor, which would leave a balance in the plaintiffs' favor, upon the last service, of $8.55, including interest.

In regard to the first term of service, or residence, after the plaintiff's wife became of age, it is very obvious that neither party expected she was to receive any other pecuniary compensation, than what defendant's generosity might prompt him to give. But in regard to the latter, it seems different. There is nothing which would induce us to doubt, that compensation was expected. The only wonder is, that, when the defendant delivered $108 during that

71

term, he should not have first paid his debt, and left the balance to go upon the score of gratuity, or generosity. Men are very likely to meet their debts first, and then discharge the more *imperfect obligations.* And it would seem that the auditor may have arbitrarily applied one certain item of $30 (money) towards the last services, upon the mere supposition that that would best meet the moral equity of the case. Be that as it may, it is his province to decide the facts; and, as they stand, the plaintiffs are entitled to judgment for the sum of $8.55. From the abstract in the Law Magazine, No. 5, April, 1844, p. 166, it seems that the Supreme Court of Pennsylvania have recently had this subject under consideration, and have come to the same determination as here made, which, in every view of the case, seems most just and reasonable.

Judgment of the county court reversed, and judgment for the plaintiffs for $8.55.