Admr. of Way, Jr., *v.* Estate of Way.

*J. L. Edwards* for the trustee.

ADMINISTRATOR OF JAMES WAY, JR. *v.* THE ESTATE OF JAMES WAY, SEN.

*Construction of auditor's report. Implied promise.*

The auditors reported that the plaintiff's intestate labored for his father, a number of years, for which he reasonably deserved to have $1.400, but that they did not find "otherwise than by inference" that the services were performed at his request; and in an amendment they added that they did not find that there ever was any agreement or promise on the part of the father to pay, &c. *Held*, as the proper construction of the report that they did find a request by way of inference, and that by the amendment they intended nothing more than that there was no *express* agreement or promise.

Held also, that under such a state of facts the law would imply a promise.

BOOK ACCOUNT. The plaintiff claimed $4,125, for thirty-three years work of intestate at $125.00 per year, in reference to which

41

the auditors found and reported that the said James Way, Jr. lived with and labored, when in health and so disposed, for his father, the said James Way, nearly all his time after he was 21 years of age to the time of his father's demise in 1849, but that they did not find on what terms the services were rendered, or that any contract as to the length of time he was to work, or the amount or sum he was to have therefor, or when the same was to be paid, was ever made between them—nor, otherwise than by inference, that the services were performed at the request of the said James Way. In 1837 his father recognized an indebtedness, but to what amount, or on what account was not shown, but he proposed selling his farm and said that James was going away, and wanted his pay. It was not shown that previous to that time he ever recognized any indebtedness. He did not sell his farm however, nor did James Way, Jr. go away, but stayed and worked until 1847, when James Way wished to change his situation somewhat, and have his grand-son, Alanson Way, live with him and take care of him and his wife, and have the farm when they had done with it. At that time James Way recognized an indebtedness to James Way, Jr. for work and labor done on the farm, and thought it would amount to $2,000 : no contract was concluded between James and Alanson Way; and James Way, Jr. continued to live there till his father's decease in 1849. The auditors further reported that they found that the said James Way, Jr. reasonably deserved to have for his said services $1,400, which sum they allowed him, and, in an amendment to their first report, they added that they did not find that there ever was any agreement or promise on the part of James Way to pay James Way, Jr. for his labor or services, and that there was no proof that James Way, Jr. ever made any claim for his services during his lifetime.

The county court, December Term, 1854,—POLAND, J., presiding,—rendered judgment, upon the report, for the defendant. Exceptions by the plaintiff.

*Cooper & Bartlett* for the plaintiff.

*H. F. Prentiss* for the defendant.

The opinion of the court was delivered by

REDFIELD, CH. J. This is a claim on the part of the estate of the son against the estate of the father for services rendered the father, in his lifetime, while the son continued a member of his father's family after he became of age. The term of service charged is thirty-three years, and a recovery is resisted chiefly upon the ground of the decisions in this state that, under such circumstances, ordinarily, the law will not imply an obligation to pay and that the auditors have in this case reported that they find no request by the father to perform the service except by way of inference, and do not find that there was any agreement or promise on the part of the father to pay the son, or that the son ever made any claim upon the father during the lifetime of the father.

But from the very form of expression in regard to the request by the father to have the son perform the service, we must suppose that the auditors did intend to have it understood that such a request, in legal effect, was to be inferred; otherwise what can be understood by the expression, "we do not find, *otherwise than by inference,* that the services were performed at the request of the father"? And, as the finding, in regard to the contract, and the plaintiff's claim for pay is by way of addition to the original report, we do not feel at liberty to suppose the auditors intended this to control or contradict their former report, where it is susceptible of a construction consistent with it. Such a construction would be to involve the auditors in conduct so absurd and puerile that we should hesitate to adopt it, unless from necessity. And, in looking into the report, it is obvious there is no necessary contradiction between the principal report and the subsequent addition.

In the principal report, then, the auditors find, by way of inference, that the services were performed at the request of the father, that the father, many years after the commencement of the service, said he wanted to sell his farm, *as James wanted his pay,* that as late as 1847, and but two years before his death, upon an attempt to make an arrangement with his grandson to live with him, the father acknowledged an indebtedness to this plaintiff, which he thought might amount to $2,000; and that the services were worth and the plaintiff entitled to have $1,400. From all this we can only conclude the services were performed by the plaintiff at the request of defendant under the mutual expectation at the time,

that compensation would be made to the amount they were reasonably worth, and that the addition to the report means nothing more than that there was no express agreement or promise in regard to the services, and the plaintiff never made any specific claim upon defendant for pay. But taking all this together we think the law, under the circumstances, will imply a promise to make compensation, such as is reasonable, which is found to be $1,400, and that the facts found do not bring the case within the decision in *Fitch* v. *Peckham,* 16 Vt. 150 and *Andrews* v. *Foster,* 17 Vt. 556 And the judgment below is reversed, and

Judgment for plaintiff for $1,400, and interest from the filing of the report in the county court and costs. The judgment to be certified to the probate court.