LEANDER AND CAROLINE M. DAVIS v. JONAS GOODENOW.

*Action for services of a child or other member of the family.*

In order to maintain an action for services which were rendered by a child, or other relative, living in the family of a parent, or person standing in that relation, it should appear that the parties expected, at the time the services were performed, that they were to be compensated by wages, and that they were dealing as debtor and creditor. If there was only a general assurance that the services should be liberally compensated, and the parties contemplated nothing more than a present support and a future gratuity or legacy, an action cannot be sustained.

BOOK ACCOUNT. The plaintiffs' principal claim was for the services of Caroline M. Davis, wife of Leander Davis, before her marriage, in reference to which the auditor reported the following facts.

Caroline M. Davis, one of the plaintiffs, and the grand-daughter of the defendant, lost her father when she was about twelve years old, and, at his decease, went to the defendants to live until she was eighteen, the defendant agreeing to do well by her. She lived in defendant's family, from the time she was twelve until she was eighteen, the defendant clothing and schooling her, and treating her more like a child than a hired servant. When she was eighteen, in April, 1847, she went to Nashua, New Hampshire, to work in a factory. In August, 1847, her sister wrote, at the request of the defendant, for her to come to the defendant's to work, and that he would pay her as well as she was doing in the factory. She came immediately after receiving the letter, and continued to live in his family, with slight interruptions, until August, 1849, living and working, and the defendant providing for her the same as he had done previous to her becoming eighteen. In August, 1849, she left and went to Kingston, N. H., where she remained until about the first of December after, when she wrote home to the defendant, "if he had any mercy on her, to send her money to come home with." The defendant sent her five dollars, and she came home to her mother's, and in a few days went to the defendant's, and remained as before until about April, 1850. During the time from August, 1847, to April, 1850, that the said Caroline lived with the defendant, she would "*flare up*" occasionally, and run home to her mother's, and very soon the defendant would go after her and persuade her to return, promising her each time, if she would

go back, "he would do well by her," and she "should be well paid."

The plaintiffs were married Nov. 2d, 1850.

In January, 1851, the defendant being old and very infirm, settled off with his son, Jonas Goodenow, Jr., and deeded him about 130 acres of land, and most of his personal property, and the said Jonas agreed to support the old folks. At the same time he deeded to the said Caroline's mother a house and about 30 acres of land, valued at $600.00, and to the five grand-children, (including the said Caroline) about 40 acres of land, valued at $700.00. This land was deeded by defendant, because he "thought it was right they should have it." Nothing was said about its being in payment for claims they had against the defendant.

During the whole time the said Caroline lived with defendant, no accounts were kept by either party; and when she went to New Hampshire, both times, and when she left in the spring of 1850, and when she was married, and when the defendant deeded the land, no claim was made by her that anything was due her.

No demand was made on the defendant for pay until a short time before this suit was brought, and no charge put upon paper until after the commencement of this suit.

The auditor reported that for her services from 1847 to 1850, over and above what the said Caroline had received in clothing, schooling and money, there was due the plaintiffs the sum of forty dollars, subject to the opinion of the court upon the facts found.

The county court, March Term, 1854, POLAND, J., presiding, rendered judgment on the report for the recovery by the plaintiffs of said sum of forty dollars, to which the defendant excepted.

*J. A. Vail* and *Peck & Colby* for the defendant.

The declarations of the defendant, under the circumstances reported by the auditor, do not distinguish this case from the following. *Fitch* v. *Peckham, Exr.,* 16 Vt. 150. *Andrus & Wife* v. *Foster,* 17 Vt. 556. *Sharp* v. *Crossey,* 11 Barbour 224. *Williams* v. *Hutchinson,* 3 Comstock 312. *Candor's Appeal,* 5 Watts & Serg. 515. *Lantz* v. *Trey and Wife,* 14 Penn. 201 and 19 Penn. 366. *Zerlee* v. *Miller,* 16 Penn. 488. *Sanders* v. *Wagonseller,* 19 Penn. 366. *Resar* v. *Johnson,* 1 Smith (Indiana) 81. *Ridgway* v. *English,* 2 New Jersey 409.

Davis *v.* Goodenow.

*Heaton & Reed* for the plaintiffs.

The relation of parent and child terminated in April, 1847. The subsequent services were at the special request of the defendant and upon his express promise to pay. This brings the case within the rule laid down in *Fitch* v. *Peckham Exr.*, 16 Vt., 150, and it is a stronger case than *Andrus & Wife* v. *Foster*, 17 Vt. 556.

The opinion of the court was delivered by

REDFIELD, CH. J. In this case the action is brought by a grandchild to recover for services rendered to her grandfather while she constituted a member of his family, where she was principally brought up, her father having died when she was a child, and left the family poor. The plaintiff's mother being a child of the defendant, he took an interest in the family, and rendered them assistance. The services were all performed after she became of age, and had gone abroad to work for herself, and returned at defendant's request, with the assurance she should be paid as well as she was then doing. This was substantially repeated a good many times during some three years while plaintiff continued mostly in defendant's service, much as before she was of age, rather as a member of the family than as a servant. No reckoning of wages or account on either part was ever had or kept, nor was any claim ever made by the plaintiff for pay, or that anything was due her when she left the defendant, or when she was in distress for money to get home with from New Hampshire, the second time she left him, or when she was married, or when the defendant distributed his property, as he did most of it, it would seem, giving some to plaintiff's mother, and some to her children.

Under this state of the facts, the case seems to us the ordinary one of a child, or other relative, living in the family of the parent, or one occupying that place, after they become of age, with the assurance they shall be liberally compensated, without saying in what mode, and with no definite expectation that either the service or support shall create a debt; in which case it is well settled that neither can sustain an action against the other for any excess of the real value of the one above the other.

We think the rule laid down by this court in the cases cited in argument is not to be departed from, viz. that it must appear une-

Davis v. Goodenow.

quivocally that the parties, at the time of the service, supposed
they were dealing as debtor and creditor, that the service was for
wages and not for support, or in expectation of a gratuity or legacy.
The judgment which was rendered in *Andrus and Wife* v. *Foster*,
for a fragment of the service, was upon the ground that the parties
seemed to have considered that service as performed for wages, the
defendant having already paid her thirty dollars in money towards
her wages, as the auditor reported, before she left; while here the
plaintiff left repeatedly, and other events occurred imposing upon
her the strongest motive for making a demand of wages, if she
deemed herself entitled to any, and she made no such claim. And
so in the late case of *Noy* v. *Noy*, in Orleans county, the report
showed unequivocally that the defendant recognized the service
as a pecuniary debt, naming the sum of two thousand dollars as
the probable amount. But, in the present case, there is nothing to
show that the parties so regarded it, unless it was to be inferred
from the circumstances and the kind of service. And if there is
any force in these, the inferences should be made by the auditor to
whom they were addressed. And as we are inclined to give to the
plaintiff every reasonable chance of making out her case, the judg-
ment will be reversed and the case recommitted, that the auditor
may report whether there is anything in the case which shows satis-
factorily that it was the expectation of the parties, at the time the
service was performed, that it created a debt, or that the plaintiff
should have wages. This is the very best ground upon which a
recovery in such case could be allowed.

The case of *Candor's Appeal*, 5 Watts & Serg. 515, which is
certainly a very satisfactory case upon this subject, seems to require
even more than this. ROGERS, J., says, a recovery could not re-
ceive "the countenance of the court unless accompanied *with clear
proof of an agreement*, not depending on loose and idle declara-
tions of the defendant, but on unequivocal acts,—as a settlement
of an account, or money paid as wages (as in the case of *Andrus
and Wife* v. *Foster*.) No doubt should be suffered to remain that
the services were rendered in the expectation of wages, and not
with a view to remuneration from the bounty of the parent, either
by will or by gift in his lifetime." This seems to us the true rule
upon the subject, except that we should regard the finding of an

auditor or the jury as conclusive upon this expectation, if found upon evidence proper to be received as tending to establish the point. But to allow such a recovery upon no express finding of the fact, and upon circumstances which, taken all together, seem to us to indicate the contrary, would be virtually to abrogate the rule, that such service did not create a debt.

The same view seems more fully confirmed in a recent case in Pennsylvania, *Lantz* v. *Trey and Wife*, 19 Penn. 366. LOWRIE, J., there says: "When individuals stand to each other in a family relation, as distinguished from that of master and servant, the law implies no contract for wages." "This relation must be first changed. Of course an express contract for wages will have this effect."

Judgment reversed and case recommitted.