GERTRUDE P. DANYEW v. JULIANA D. POWERS' ESTATE.

Special Term at Rutland, November, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 27, 1911.

*Parent and Child—Services of Child—Liability of Parents—
Sufficiency of Evidence.*

To entitle a child to recover payment for services rendered a parent, they
must have been performed under a contract, either express or implied,
to pay therefor, and such contract cannot be implied from the mere
rendition of the services.

In an action by a daughter against her deceased mother's estate to recover
for services rendered the mother, evidence considered and *held* insuf-
ficient to warrant the inference that the services were rendered under a
mutual understanding between plaintiff and her mother that plaintiff
should be paid therefor.

APPEAL from the decision of commissioners disallowing
the claim of Gertrude P. Danyew presented against the estate
of Juliana D. Powers. Declaration, general assumpsit. Pleas,
the general issue, and the Statute of Limitations. Trial by
jury at the March Term, 1910, Rutland County, *Hall*, J., pre-
siding. Verdict and judgment for the plaintiff. The defendant
excepted. The opinion states the case.

*M. C. Webber* for the defendant.

*Thomas W. Moloney* for the plaintiff.

HASELTON, J. This is a probate appeal. The plaintiff
brought a claim against the defendant estate for services ren-
dered to her mother, the intestate, from June 1896, to May
1904, a period of about eight years. In county court trial by
jury was had, and verdict was returned for the plaintiff to re-
cover seven hundred and fifty dollars. The principal question
reserved by the exceptions is whether or not a motion made

at the close of the evidence that a verdict be directed for the defendant should have prevailed.

A. C. Powers and Juliana D. Powers were father and mother of the plaintiff. During the most of the time in question these parents lived on a small place, worth about fifteen hundred dollars, situated in the town of Proctor. The title of the place was in Mrs. Powers. After becoming of age the plaintiff, until her marriage, remained for the most part at the home of her parents, rendering services in the way of house work, and of sewing and mending, and at times in the way of care for her father and mother in sickness. At various times, however, she was elsewhere, sometimes on visits, sometimes doing sewing, and at one time teaching school. In May 1904, Gertrude married, moved away, and has since lived in Granville, New York. The uncontradicted evidence was that at the time of her marriage she was twenty-eight years old. At that time her father was eighty-two years old and her mother was seventy-six. This elderly couple continued to live on the home place until about four years after the plaintiff had married and moved away, when they died almost simultaneously, the father March 5, 1908, and the mother five days thereafter.

The evidence of a neighbor, Mr. Shangraw, was to the effect that not long before Mrs. Powers died and frequently at previous times, both before and after the marriage of Gertrude, Mrs. Powers said to him that Gertrude always lived with her parents, and that she should have what was left after they got through with it, that it belonged to her, that she had earned it, that she had done enough for them so that after they got through with the property she was going to have it. In her last sickness Mrs. Powers was attended by a professional nurse and to this attendant Mrs. Powers, some three or four days before her death talked of her daughter, Gertrude, and the mother then further said that she always meant that Gertrude should have the home place when the parents were through with it. Mr. Shangraw, before referred to, testified that he had advised Mrs. Powers to deed the property to Gertrude if she was to have it and that Mrs. Powers said she was going to, but that shortly after saying this she died.

There was no evidence that Gertude knew of any of these declarations of Mrs. Powers, nor that Mr. Powers knew of them. These declarations tend to show affection on the part of Mrs. Powers towards the plaintiff, a recognition of her fidelity and assistance, and a purpose and desire that Gertrude should have what the parents should leave of the property be it more or less. But the question for us is do these declarations and the circumstances disclosed by the evidence viewing them in the light most favorable to the plaintiff fairly tend to show a contract with the plaintiff or that both the mother and daughter during the time in which the services which terminated upon the marriage of the daughter were rendered mutually understood and expected that the services were to be paid for—whether between the mother and daughter the relation of debtor and creditor or of master and servant existed.

Where services are rendered by a child to a parent or by a parent to a child an implied promise to pay for the services is not inferred from the mere fact that they have been performed. The fact that a child lives and boards and works with the parent after becoming of age does not of itself give the parent any claim against the child for board nor does it give the child any claim against the parent for services. Reasons of public and domestic policy forbid. And so our cases following one upon another in a long line of decisions have established the rule that to warrant recovery by a child from a parent for services rendered, they must have been rendered either under an express contract or with a mutual understanding and expectation of payment, though such contract or such understanding and expectation may be inferred from circumstances.

The relation of master and servant or of debtor and creditor must in some way be substituted for, or added to, the mere relation of parent and child. *Fitch* v. *Peckham,* 16 Vt. 151; *Andrus* v. *Foster,* 17 Vt. 556; *Davis* v. *Goodnew,* 27 Vt. 715; *Putnam* v. *Town,* 34 Vt. 429; *Sprague* v. *Waldo,* 38 Vt. 139; *Lunay* v. *Vantyne,* 40 Vt. 501; *Harris* v. *Currier,* 44 Vt. 468; *Doane* v. *Doane,* 46 Vt. 485; *Sawyer* v. *Hebard,* 58 Vt. 375, 3 Atl. 529; *Wescott* v. *Wescott,* 69 Vt. 234, 39 Atl. 199.

Stress is laid in argument upon the fact that in speaking

of the daughter and her deserts Mrs. Powers, as one witness testified, said that Gertrude had "earned" what would be left of the property, that it belonged to her. It is claimed that this was an admission of a past arrangement, or contract, between the mother and daughter under which the latter had performed the services which she did in the Powers household. But in view of the whole conversation in which these words were used, we think that the language referred to is not reasonably capable of the construction claimed for it. In this case there was no evidence that the daughter continued at home, prior to her marriage, at the request of either of her parents, or that she returned from time to time, as she did, at their request. There was no evidence that any account of any matter between the mother and the daughter was kept, and as has been said there was no evidence that the daughter or her father knew of the declarations of Mrs. Powers. From an examination of the entire transcript, which has been referred to as controlling upon the question of the tendency of the evidence, we find nothing which can be fairly said to tend to show that between Mrs. Powers and the plaintiff there was at the time the services in question were rendered a mutual expectation of payment therefor, or that, in any way, the relation of master and servant, or that of debtor and creditor, or any other relation than that between an affectionate mother, on the one hand, and a dutiful daughter, on the other, existed. This being so a verdict for the defendant estate should have been directed.

If the mother's intentions were what the testimony referred to tended to show, she failed to carry them into effect. For the law cannot distribute a parent's estate among children by weighing the relative degree of care and assistance which they respectively have afforded to the parent.

*Judgment reversed and judgment that the plaintiff's claim be disallowed with costs. Let the result be certified to the probate court.*