CHRISTIE PETERS *v.* ESTATE OF EUGENE PORO,
SOPHIE CURTIS, APPELLANT.

October Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 13, 1922.

*Parent and Child—Services—No Presumption of Obligation to Pay—Contract May Be Implied from Circumstances—"Contract Implied in Fact"—When Question for Jury—Test of Liability—Presumption Where Services Rendered at Re-*

*quest of Person Other Than Parent—Mutual Understanding—Evidence Insufficient to Show Agreement—Past Consideration—Moral Obligation—Reversible Error—When Novation Question of Fact—Meaning of Novation—May Be Inferred from Circumstances—Essential Elements—Statute of Frauds—Consideration—Novation Not Presumed—Question of Novation for the Jury—Disposition of Case on Reversal—Questions Not Briefed—Jury Question.*

1. Where services are rendered by a child to a parent, or by a parent to a child, an implied promise to pay for the services is not inferred from the mere fact that they have been performed, and this rule has been extended to other relationships of those living in the same family, including brothers and sisters.

2. The only effect of such rule is to make inapplicable the usual presumption of an obligation to pay for services rendered with the knowledge and approval of the recipient, so that to recover plaintiff must show, in addition, that the services were rendered either under an express contract or a mutual understanding and expectation of payment, which may be inferred from the circumstances.

3. A "contract implied in fact" differs from an "express contract" only in the mode of proof, and is implied only in that it is to be inferred from the circumstances,—the conduct, acts, or relation of the parties,—rather than from their spoken words.

4. Where valuable services were rendered by a child for a parent, a parent for a child, or by one close relative for another living in the same family, under circumstances that reasonably justified an expectation and understanding on the part of both parties that there was to be pecuniary compensation, the question of whether a contract should be implied in fact is for the jury.

5. Relationship by blood, aside from that of parent and child, or one similar to it, does not rebut the ordinary presumption that valuable services are to be compensated, the test being whether the parties have once so stood related to each other that the one rendering services could not exact payment therefor from the other.

6. Where a mother conveyed certain property to her son upon condition of life support by him, and subsequently, at his request, a sister cared for the mother until the latter's death, the rule that there is no presumption that services rendered by a child

to a parent are to be compensated has no application, as the brother, and not the mother, was the legal beneficiary thereof.

7. Where there was evidence tending to show that plaintiff, at the request of her brother and under his promise to pay therefor, assumed the care of her mother for whose life support such brother was under legal obligation, there was a question for the jury as to whether such services were rendered under a mutual understanding between the brother and sister that she was to be paid for them.

8. Where plaintiff, intestate's sister, at the request of another brother to whom their mother had conveyed certain property in consideration of life support, took care of the mother until the latter died, and subsequently the other brother conveyed the property to intestate, *held* that the declarations of these brothers which indicated an intention on their part to pay plaintiff for such services, did not show an agreement by the intestate, at the time the property was conveyed to him, to assume any liability which the other brother might have to pay plaintiff for such services.

9. A past consideration which did not create a legal obligation at the time it was furnished will not support a subsequent promise, and as the law implies no promise to fulfill a mere moral obligation, such an obligation is insufficient consideration for a subsequent promise.

10. Where services rendered by plaintiff in caring for her mother did not inure to the benefit of intestate, her brother, and the consideration arising from a conveyance of property to him by another brother, did not move from plaintiff, the intestate's subsequent promise to pay plaintiff for such services, if induced by such conveyance, was merely upon a past voluntary consideration and insufficient, and it was reversible error to submit plaintiff's claim based thereon to the jury.

11. The issue of a novation presents questions of fact, where there is any supporting evidence and the terms of the agreement are equivocal or uncertain.

12. The term "Novation" means that, there being a contract in existence, some new contract is substituted for it, either between the same or different parties, the consideration mutually being the discharge of the old contract.

13. The intention of the parties in making a new contract to extinguish one previously in existence and thus constitute a

novation, need not be express but may be inferred from the circumstances.

14. Essential elements of a novation are a legally sufficient consideration and the extinguishment of the debt for which the new obligation is said to be substituted.

15. In a contract of novation, the new promise is not within the statute of frauds requiring a special promise to answer for the debt of another to be in writing, but is an independent contract and provable as such.

16. In a contract of novation to pay another's debt in consideration of his being discharged, there need be no consideration moving between the person promised for and the person who promises, the mutual agreement of the parties that the original obligation shall be extinguished by the new undertaking being a sufficient consideration.

17. Novation is never presumed, and to constitute a novation there must be a clear and definite intention on the part of all concerned to that effect.

18. Evidence, by which the plaintiff sought to establish a claim against a deceased brother's estate on the theory of novation, whereby she claimed the promise of the intestate to pay her was substituted for the obligation of another brother to reimburse her for services rendered at the latter's request, *held* to make a question for the jury.

19. Where the plaintiff, who prevailed below, as one ground of her right to recover, claimed a novation, but the trial court did not submit that question to the jury, although the case must be reversed because the evidence was insufficient to support the verdict in certain particulars on which the case was submitted, final judgment will not be entered against plaintiff where it appears probable that upon retrial she could make a better showing on the question of novation.

20. Questions respecting the sufficiency of the pleadings to raise a certain issue, although raised below, will not be considered when not briefed.

21. On plaintiff's claim against the estate of a deceased brother for services rendered by her to him and to another brother, *held* that whether there was a contract by the intestate to pay therefor was a question for the jury.

APPEAL from the decision of the commissioners allowing the claim of Christie Peters against the estate of Eugene Poro. Complaint in the common counts. Pleas, the general issue and the statute of limitations. Replication of an agreement by the intestate within the period of the statute of limitations. Trial by jury at the September Term, 1920, Chittenden County, *Butler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion state the case. *Reversed and remanded.*

*J. J. Enright, T. E. Hopkins,* and *H. A. Bailey* for the defendant.

*M. G. Leary* and *V. A. Bullard* for the plaintiff.

TAYLOR, J. This is an appeal from the allowance of commissioners on the estate of Eugene Poro. The claim in question was for personal services rendered to the intestate and in the care of intestate's mother, Christie Poro, and of his brother, Uber Poro. The cause was tried in the court below on a complaint in the common counts, to which the defendant pleaded the statute of limitations and the general issue. During the trial the plaintiff was permitted, against defendant's objection, to file what was termed a replication counting on an agreement by the intestate, made within the period of the statute of limitations, to pay for the services in caring for his mother and brother by way of a will devising all of his property to the plaintiff. The intestate was killed in an accident on April 23, 1918, and no will was found. The plaintiff and the appellant are sisters of the intestate and Uber Poro. They and two other sisters married and had homes of their own. The brothers were unmarried and remained at the homestead where all the children were born, for many years making their home with their mother, who was a widow. Uber was older than the intestate. In 1894 the mother conveyed the homestead to him in consideration of his furnishing her proper support and care during her lifetime. The intestate and his mother and brother thereafter continued to live together as before. The plaintiff's home, where she kept house for her husband and family, was but a short distance from that of her mother and brothers. The mother was an invalid for the last nine years of her life and there came a time when she re-

quired such care and attention as could not properly be performed by the sons. Plaintiff's evidence tended to show that for about nine years before the mother's death in November, 1911, in addition to her own household duties she did much of the brothers' housework and gave her mother the necessary care that her infirmity demanded. After the mother's death the brothers lived alone, and the plaintiff continued to do their housework, washing and cooking, the washing and cooking in part being done at her own home. In November, 1912, Uber Poro conveyed the house and lot where they lived to the intestate for the consideration expressed in the deed of one dollar and the right to the use of one room in the house so long as he should live. He was then in poor health, and for about three years before his death depended more or less upon the care of others. He was suffering from tuberculosis, and for several months at least was quite helpless. The plaintiff's evidence tended to show that she took practically the entire care of Uber in this illness. He died in September, 1917. After Uber's death the intestate occupied the homestead alone, but what, if any, assistance he received from the plaintiff about the housework does not appear. He was about his usual employment when he met with the accident that caused his death. There was evidence tending to show that the plaintiff's circumstances required her to work out at times, and that she was obliged to give up this service in part at least to attend to the wants of her mother and brothers.

There was no evidence as to the arrangement under which the Poro home was maintained. It could fairly be inferred, however, from what appeared respecting their relations, that the sons shared in the expenses of maintaining the family and the mother conducted the household until prevented by her infirmity, after which the sons did such of the housework and gave their mother such care as they were able to do. They were people of limited means, and the sons were laboring men, whose work when employed required them to be away from home during the daytime.

So far, the facts were not in dispute or the evidence was such that the questions were clearly for the jury. The principal controversy was and is whether there was any evidence of an agreement by the intestate to pay for any of the services. The question was raised by a motion for a directed verdict and by

various exceptions to the charge. The plaintiff's claim embraces three distinct classes of items, as to each of which the court took a special verdict. Under the charge the jury found the plaintiff entitled to recover $624 for services rendered in the care of the mother from November 6, 1906, to the date of her death, November 17, 1911. They also found her entitled to recover $390 for services in the care of Uber, and other services for the intestate, from November 23, 1911, to the death of Uber, September 12, 1917. They found, however, that the plaintiff was entitled to recover nothing for services after the latter date. The general verdict was for the plaintiff for $1,014.

Respecting all of the services for which the plaintiff seeks to recover, it is claimed that on the evidence the services were gratuitous and not rendered with any expectation as to payment on the part of either party. The defendant assumes that there was no evidence of an express contract, and invokes the rule that where services are rendered to a deceased person by members of his own family, they are presumed to have been rendered for love and affection, and that a contract to pay therefor will not be implied. We have no case that goes to this extent.

[1]    It is well settled that where services are rendered by a child to a parent, or by a parent to a child, an implied promise to pay for the services is not inferred from the mere fact that they have been performed. *Danyew* v. *Power's Estate*, 84 Vt. 255, 78 Atl. 785, and cases there cited. This rule has been extended to other relationships of those living in the same family, including brothers and sisters. See *Andrus* v. *Foster*, 17 Vt. 556; *Davis* v. *Goodenow*, 27 Vt. 715 (niece); *Lunay* v. *Vantyne*, 40 Vt. 501 (adopted daughter); *Sprague* v. *Waldo*, 38 Vt. 139 (son-in-law); *Briggs* v. *Briggs' Estate*, 46 Vt. 571 (sister); *Ashley* v. *Hendee*, 56 Vt. 209 (foster child); *Ormsby* v. *Rhoades*, 59 Vt. 505, 10 Atl. 722.

[2]    But with us the only effect of this rule is to take the case out of the general rule of the law of contracts, that, whenever valuable service is rendered with the knowledge and approval of the recipient, an obligation to pay therefor will be presumed, in the absence of a showing to the contrary. 2 Parsons on Contracts, 46; *Lunay* v. *Vantyne*, 40 Vt. 501; *Harris* v. *Currier*, 44 Vt. 468. The validity of the claim is an open question; but to warrant recovery in such a case the plaintiff must go further and show that the services were rendered either under

an express contract or with a mutual understanding and expectation of payment, though such contract or such understanding and expectation may be inferred from the circumstances. *Danyew* v. *Power's Estate, supra; Way's Admr.* v. *Way's Estate,* 27 Vt. 625; *Ashley* v. *Hendee,* 56 Vt. 209; *Bliss* v. *Hoyt's Estate,* 70 Vt. 534, 41 Atl. 1026; *Drown's Guardian* v. *Chesley's Estate,* 92 Vt. 19, 102 Atl. 102, L. R. A. 1918 A, 1056.

[3]    Some of the earlier cases, notably *Sprague* v. *Waldo,* 38 Vt. 139, and *Lunay* v. *Vantyne,* 40 Vt. 501, give the impression that an express promise must be proved when the relation of the parties is that of parent and child, or its equivalent. This apparent contradiction, however, is due to a failure to distinguish between contracts implied in law and contracts implied as a matter of fact. Cases of the nature involved here all contemplate contracts of the latter class, which are essentially the same in that the source of the obligation in each case is the intention of the parties. The terms "express contract" and "contract implied in fact" indicate a difference only in the mode of proof. A contract implied in fact is implied only in that it is to be inferred from the circumstances,—the conduct, acts or relation of the parties,—rather than from their spoken words. *Bliss* v. *Hoyt's Estate,* 70 Vt. 534, 41 Atl. 1026; *Raymond* v. *Sheldon's Estate,* 92 Vt. 396, 104 Atl. 106. See, also, *In re Bryant's Estate,* 73 Vt. 240, 50 Atl. 1065. It was said in *Andrus* v. *Foster,* 17 Vt. 556, that it is difficult to lay down any general rule upon the subject; that every case will be more or less affected by its own peculiar circumstances,—the amount and kind of labor, the ability and necessity of the parent (the recipient of the services), the course of dealing between the parties, whether they kept accounts or not, whether the demand for compensation is made early or late. These and similar circumstances will be significant indications of the expectation of the parties at the time.

[4]    It was said in *Westcott* v. *Westcott's Estate,* 69 Vt. 234, 39 Atl. 199, that mutual expectation could be shown by the circumstances under which the services were performed, the situation and surroundings of the parties, their pecuniary circumstances and the declarations of the party sought to be charged. To support the inference the circumstances must fairly tend to show that the parties at the time of the service supposed they were dealing as debtor and creditor, that the service was for

wages and not for support or in expectation of a gratuity. *Davis v. Goodenow*, 27 Vt. 715. In other words, the case is for the jury if the services are performed under circumstances that reasonably justify an expectation and understanding on the part of both parties that there was to be pecuniary compensation. *Drown's Guardian* v. *Chesley's Estate*, 92 Vt. 19, 26, 102 Atl. 102, L. R. A. 1918 A, 1056. The temptation to overreach in such claims against a decedent's estate is not to be overlooked. The relationship is a circumstance to be considered by the jury with the other circumstances in the case. But the fact of a contract to pay for such services may be established by the ordinary measure of proof required in civil cases. *Putnam* v. *Town*, 34 Vt. 429.

[5]    Aside from the relationship of parent and child, or one similar to it, relation by blood does not rebut the ordinary presumption that valuable services are to be compensated. The test is whether the parties have once so stood related to each other that the one rendering services could not exact payment therefor of the other. *Briggs* v. *Brigg's Estate*, 46 Vt. 571, 578. It was held in the case cited that the law will not presume that such a relation once existed between the parties simply because they were brother and sister.

[6, 7]    The defendant's argument proceeds upon the erroneous theory that the question respecting the services in caring for the mother is governed by the rule applicable to services rendered by a child to a parent. The brother Uber, and not the mother, was the beneficiary of such services, he being under contract to provide proper care for the mother during her lifetime. Not being able to give suitable care himself he asked the plaintiff to take care of her mother and said, "If you come and help you will be paid for it." With this direct evidence of a promise to pay which the defendant overlooks, and the *prima facie* effect of the presumption favorable to the plaintiff, to which we have already referred, coupled with the other circumstances disclosed in the record, there can be no question of the sufficiency of the evidence to make it a question for the jury whether the services in caring for the mother were rendered with a mutual understanding and expectation between Uber and the plaintiff that they were to be paid for.

[8]    But something more is necessary to entitle the plaintiff to recover this part of her claim from the intestate. There

was no evidence that he was a party to the original contract, and the presumption which the law raises would not affect the question of his liability. The theory upon which this part of plaintiff's claim was submitted to the jury was that there was evidence tending to show that at the time Uber conveyed the homestead to the intestate the latter agreed, as part consideration of the conveyance, to pay the plaintiff for her services in caring for the mother. The controlling question is whether such was the fair tendency of the evidence. The deed bears no evidence of such an agreement, and there is no direct evidence respecting the consideration of the conveyance. The plaintiff relies mainly upon evidence of declarations by the intestate and by Uber in his presence in support of her position. We quote the substance of all that was shown by way of such declarations. One Nora Lamudge, a cousin of the intestate, helped the plaintiff clean the Poro house on an occasion when Mrs. Poro was living. She testified that the intestate wanted to pay her but she declined to take the money, whereupon he said, "Some day I won't forget you. You will get your pay and so will Mrs. Peters" (the plaintiff). Alice Maynard testified with reference to an occasion some two years before Uber died, when the plaintiff, Uber, and the intestate were present and were talking about the work. The intestate said Mrs. Peters had been working awfully hard and it would not be more than right that she should get pay for what she was doing, "if they would ever die." Uber said to the intestate, "Of course after we shall die it would not be more than right that Mrs. Peters should have what was coming to her in the line of pay—she has done so much for us and been so good to us in all kinds of ways. My property which I turned in to you, you make that out to pay Mrs. Peters with for being so kind." The intestate replied, "I certainly will." Mrs. Hayes, a neighbor, was a frequent caller at the Poro home during Uber's sickness and heard him say in the intestate's presence, referring to the plaintiff, "We can never repay her for all she has done." On different occasions she heard the intestate say, referring to the plaintiff, that she would have the property—that she would have everything that was left for all she had done. It did not appear whether the plaintiff was present on any of these occasions. On an occasion in January, 1916, when calling at the Poro house, one Caissee heard a conversation between Uber and the intestate. He testified: "They said they would see their

sister (the plaintiff) well paid for the services she rendered. Eugene said, if he was the last one to go he intended to make a will and would leave his property to his sister—wanted her to have the estate.'' The plaintiff was not present on this occasion. One Bouchard, the undertaker who cared for Uber's body after his death, testified that the intestate said he was lucky to have a good sister, referring to the plaintiff, and added: ''I would not forget to pay her because she has been more than a sister with me—she is really a mother to me. If there is anything left when I go away from this world, everything ought to go to her.''

When the proper test is applied to these declarations, it will be seen that they come short of any evidence of a contract entered into by the intestate at the time he took the deed from Uber to assume the latter's liability for plaintiff's services. The statements attributed to Uber were, at most, only evidence of an original obligation on his part; while those of the intestate go no further than to show appreciation of the services rendered while the mother was living, if it can be said that he had those services in mind, and an intention to reward the plaintiff therefor by a will, which, so far as appears, was defeated by his untimely death. The promise, made to Uber long after the conveyance, to ''make out'' the property received from him ''to pay Mrs. Peters with for being so kind,'' would have no tendency to prove such an agreement at the time the deed was executed. And in this view of the case it could not be made the basis of a recovery for services previously rendered. So far as such services are concerned, the promise would be upon a past voluntary consideration.

[9, 10] The plaintiff argues that, as the intestate knew Uber was owing her for the services when he received the homestead for a nominal consideration, he was under a moral obligation to pay therefor, which would be a sufficient consideration for his promise to use the property to pay the plaintiff. *Glass v. Beach,* 5 Vt. 172, is relied upon in support of this proposition. The books sometimes say, as said in that case, that a moral obligation to do what is expressly promised is a sufficient consideration to support the express undertaking. But taken literally the statement is misleading. The case was explained in *Hayward v. Barker,* 52 Vt. 429, 36 A. R. 762, where it was said that the extent to which any case had gone by way of obviating the effect of the doctrine as to promises upon past considerations, literally

applied, is the holding that where the consideration, even without request, moves directly from the plaintiff to the defendant and inures directly to the defendant's benefit, the promise is binding though made upon a past consideration. Mr. Harriman, in his work on contracts, states the modern doctrine of past considerations to be that a pre-existing obligation will support only the promise to perform that obligation which the law, in the case of a debt, will imply; and that a past consideration which did not create an obligation at the time it was furnished, will support no promise whatever. So, as the law implies no promise to fulfil a mere moral obligation, such an obligation is no consideration for a promise. Harriman on Contracts, §§ 139-141. Among the cases applying this doctrine of past consideration are *Boolhe* v. *Fitzpatrick*, 36 Vt. 681; *Seymour* v. *Town of Marlboro*, 40 Vt. 171; *Giddings* v. *Giddings' Admr.*, 51 Vt. 227, 31 A. R. 682; *Hayward* v. *Barker, supra; Hubbard* v. *Bugbee*, 55 Vt. 506, 45 A. R. 637; *Hubbard* v. *Bugbee*, 58 Vt. 172, 2 Atl. 594; *Rood* v. *Willey*, 58 Vt. 474, 5 Atl. 409; *In re Estate of Perkins*, 65 Vt. 313, 26 Atl. 637; *Valentine* v. *Bell*, 66 Vt. 280, 29 Atl. 251; *Spencer* v. *Potter's Estate*, 85 Vt. 1, 10, 80 Atl. 821. Tested by these cases the plaintiff's argument fails. The services did not inure to the intestate's benefit, and the consideration arising from the conveyance did not move from the plaintiff. It follows that, so far as it concerned the intestate's subsequent promise, if induced thereby, the conveyance was merely a past voluntary consideration; and so, in legal effect, the promise would be without consideration. We are forced to the conclusion that the theory on which this part of the plaintiff's claim was submitted to the jury was unsupported by the evidence. The question was saved by exceptions to the charge which will have to be sustained, necessitating a reversal.

[11]    It remains to consider whether the claim of a novation, advanced by the plaintiff, would be available on a retrial; for, if not, the question of the intestate's liability on this branch of the case can be finally determined here. The record shows that the question was raised on the trial, but it was not included in the submission to the jury. One ground of the defendant's motion for a directed verdict was that there was no evidence of a novation of parties, and the court apparently adopted this view. The issue of a novation presents questions of fact, if there is any supporting evidence and the terms of the agreement

are equivocal or uncertain. *Sinclair* v. *Richardson,* 12 Vt. 33; *Atwood* v. *Mt. Holly,* 65 Vt. 121, 26 Atl. 491.

[12-15] Novation, a term borrowed from the Roman law, means that, there being a contract in existence, some new contract is substituted for it, either between the same parties or different parties, the consideration mutually being the discharge of the old contract. Under the Roman law novation takes place only when the contracting parties expressly disclose that their object in making the new contract is to extinguish the old; otherwise the old contract remains in force and the new is added to it, and each gives rise to an obligation still in force. *Hard* v. *Burton,* 62 Vt. 314, 20 Atl. 269. However, with us this intention need not be express, but may be inferred from the circumstances, following the rule of the common law. *Hard* v. *Burton, supra; Drown* v. *Forrest,* 63 Vt. 557, 22 Atl. 612, 14 L. R. A. 80; *Barre Granite Co.* v. *Fraser,* 82 Vt. 55, 71 Atl. 828. An essential element of such an agreement, like any other contract, is a legally sufficient consideration. *Manley* v. *Vt. Mutual Fire Ins. Co.,* 78 Vt. 331, 336, 62 Atl. 1020, 6 Ann. Cas. 562. Besides, it is essential to a complete novation that the debt, for which the new obligation is said to be substituted, be extinguished. *Barre Granite Co.* v. *Fraser, supra.* Formerly the term "novation" was used to describe a transaction whereby a debtor is discharged from liability to his original creditor by contracting a new obligation in favor of a new creditor by order of his original creditor. 1 Parsons on Contracts (9th ed.) 237. This is the situation ordinarily found in the cases, and there the question of consideration for the new promise presents no difficulty, for the substituted debtor is merely paying his debt to a third party on his creditor's order, and the discharge of his debt to the latter is sufficient consideration for the new promise. As shown by our cases the term has now a broader application. It is now generally applied to any new contract entered into for the purpose and with the effect of extinguishing an existing contract and includes a substituted agreement accompanied by a change of parties. To constitute a novation by the substitution of a new debtor, there must be a mutual agreement between three parties, the creditor, his immediate debtor, and the intended new debtor, by which the liability of the last named is accepted in place of the original debtor in discharge of the original debt. 29 Cyc. 1136; *Bacon* v. *Bates,* 53 Vt. 30. Thus, if B. owes C. and as part

of some new independent transaction between B. and A. the latter promises to pay B.'s debt to C. and C. assents to the arrangement, accepts A. as his debtor and discharges B., a new debt arises between A. and C. and a novation takes places. The new promise is not within the statute of frauds requiring a special promise to answer for the debt of another to be in writing, but is an independent contract and provable as such. *Sinclair* v. *Richardson,* 12 Vt. 33; *Williams* v. *Little & Co.,* 35 Vt. 323, and cases there cited; 2 Chitty on Contracts, 1373.

[16] The fact that there was no evidence of any consideration moving from Uber to the intestate at the time of the claimed agreement is not controlling. In relation to novation contracts, where the promise is to pay another's debt in consideration of his being discharged, it seems to be well settled now that there need be no consideration moving between the person promised for and the person who promises. In these cases the validity of the new promise and the discharge of the original debt are mutually dependent. They arise at the same time, and result from the agreement of the parties that the existing debt shall be extinguished and the first debtor discharged, in consideration of the new undertaking. The mutual agreement of the parties furnishes the consideration. 20 R. C. L. 368; *Bacon* v. *Bates,* 53 Vt. 30.

[17] In order to effect a novation, there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. The intention by the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The existence of such an intention may, of course, be found, although there is nothing positive in the agreement, it being a question to be decided from all the circumstances. 20 R. C. L. 366.

[18, 19] To establish the claim against the intestate on the theory of novation the plaintiff would be required to prove, not only an existing debt owed by Uber and the intestate's promise to pay the debt, but also that it was mutually intended and understood by all the parties concerned that intestate's promise was to take the place of—be substituted for—Uber's obligation to her, and by the new arrangement to extinguish Uber's obligation by discharging him therefrom. It seems clear that the

evidence made the question of novation one of fact, and so, if on a retrial it should be properly raised and insisted upon, would take this part of the plaintiff's claim to the jury.    There is an additional reason why final judgment against the plaintiff on this part of her claim should not be rendered here.    In her brief she refers to an exhibit, which has not been produced, as tending to show that there was practically no other property except the real estate conveyed to Uber by his mother with which to pay the plaintiff for her services.    If this fact should be established, it would be a potent circumstance, in connection with the other circumstances shown, in support of the claimed novation.    As it is thus made to appear that the plaintiff could probably make a better showing on a retrial, the defendant is not entitled to a final judgment here on this branch of the case.    *Rice* v. *Bennington Co. Sav. Bank*, 93 Vt. 493, 512, 108 Atl. 708.

[20]    Some question respecting the sufficiency of the pleadings to raise the issue was made below, but it is not briefed, and so is not properly before us.    The question will not be anticipated, since the plaintiff will have an opportunity to amend the complaint to meet the objection, if so advised.

[21]    So far as the claim for services recovered in the second special verdict, it is enough for present purposes to say that, tested by the principles already stated, the existence of a contract by the intestate to pay therefor was a question for the jury.    Not only had the relations of the parties changed, but the services for which recovery was had were rendered after a time when the evidence by way of declarations tended to show a mutual expectation and understanding that they were to be paid for.    It sufficiently appears from what has been said that the evidence respecting declarations was properly received.    Certain exceptions were taken to the charge, and to the refusal of requests to charge, involving the question of the statute of limitations.    It would be unprofitable to examine these exceptions as the same points are not likely to arise on a retrial.    The defendant concedes that there would be no question of the statute of limitations if the understanding was, as plaintiff claims, that she was not to be paid until after the death of her brothers.    Other points raised are sufficiently covered by the discussion of the main questions.

*Judgment reversed and cause remanded.*